# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SOLOMON COLLINS,                         :
                                         :
              Petitioner,          :
                                         :
    v.                                :          Civil Action No. 16-751-LPS
                                         :
DANA METZGER, Warden, and                :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
              Respondents.         :

_____

## <u>MEMORANDUM OPINION</u>

Janet Bateman, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Delaware, Wilmington, Delaware.  Attorney for Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

February 7, 2022
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION

Pending before the Court is Petitioner Solomon Collins' ("Petitioner") original *pro se*

Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and his Amended § 2254

Petition (hereinafter referred to as "Petition").  (D.I. 2; D.I. 18)  The State filed an Answer in

opposition, to which Petitioner filed a Reply.  (D.I. 27; D.I. 37)  For the reasons discussed, the

Court will dismiss the Petition.

## II.   BACKGROUND

As summarized by the Delaware Supreme Court on Petitioner's post-conviction appeal, the

facts leading up to his arrest and conviction, as well as the result of Petitioner's criminal proceedings,

are set forth below:

> On October 8, 2009, Tommear Tinnin was shot to death while sitting
> in the back seat of a parked car with his two cousins and another young
> relative.  The assailant fled the scene and passed two bystanders, Violet
> Gibson and Shakira Romeo.  Gibson and Romeo met with Detective
> Conner after the incident.  They both identified [Petitioner] as the
> shooter from a photo array.  Detective Conner made an audio
> recording of his interview with Gibson.  He did not record his
> interview with Romeo.  Instead, he took notes on his notepad and
> directly on the photo array he presented to Romeo during the
> interview.

> At trial, the testimony of Gibson and Romeo was inconsistent with
> their prior statements to Detective Conner.  The State used 11 Del. C.
> § 3507 to introduce their out-of-court statements through Detective
> Conner during his testimony.  The State also played the audio
> recording of Gibson identifying [Petitioner] as the shooter, and
> introduced into evidence the photo array Detective Conner had
> written on reflecting Romeo's identification.  During his testimony,
> Detective Conner clarified that Gibson had identified [Petitioner] as
> the shooter because the recording identified the suspects by number
> rather than name.  Further, he testified that Romeo identified
> [Petitioner] as the shooter and that he wrote notes regarding her
> statements onto the photo array during the interview.

After an eight day trial, a jury found [Petitioner] guilty of Murder First Degree, three counts of Reckless Endangering First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. On July 15, 2011, the Superior Court sentenced [Petitioner] to life imprisonment for the murder conviction, and additional time for the remaining counts.

[The Delaware Supreme Court] affirmed [Petitioner's] conviction on direct appeal in 2012. In 2013, [Petitioner] filed a motion for postconviction relief ["Rule 61 motion"] alleging ineffective assistance of counsel. The Superior Court denied the motion and held that counsel was not ineffective for failing to object, because admission of the § 3507 statements of both Romeo and Gibson had been proper. [Petitioner] appealed the Superior Court's rulings on the admission of each witness' § 3507 statement. During the appeal, the State learned that there was a discrepancy between the photo array that Romeo had used to identify [Petitioner], which the State admitted at trial ("State's Exhibit 84"), and the copy that the State had sent to [Petitioner's] attorney during discovery. The word "shooter" was written on State's Exhibit 84, but [Petitioner's] copy did not have the word "shooter" on it. At the parties' joint request, [the Delaware Supreme Court] remanded the case to the Superior Court for a hearing to explore the nature of the discrepancy between the photos and retained jurisdiction. [The Delaware Supreme Court] declined to address [Petitioner's] second argument at that time, which pertains to Gibson's § 3507 statement, at the time we issued the remand order.

On remand, the Superior Court held a hearing to address the discrepancy. The State offered the testimony of Detective Conner, the trial prosecutors, and the trial defense attorney. The Superior Court found that (1) Detective Conner added the word "shooter" to the original photo array shown to Romeo after the discovery copy was made for [Petitioner]; (2) the alteration made to the original photo was not done in bad faith or in response to the § 3507 issue that arose at trial; (3) Romeo identified [Petitioner] as the shooter during her interview with Detective Conner; and (4) exclusive of the photo array, the trial prosecutors and defense counsel were aware during the pendency of the case that Romeo had identified [Petitioner] as the shooter and expected her to testify consistent with that identification at trial.

Based on these findings, the Superior Court held that [Petitioner's] ineffective assistance of counsel claim failed. The court found that the issue of when Detective Conner wrote the word "shooter" on the

2

photo array was immaterial because Romeo's statement still would have been introduced as a § 3507 statement at trial. Therefore, even if trial counsel had noticed the discrepancy and raised the issue, the outcome would have been the same. Further, the Superior Court held that [Petitioner] could not show he was prejudiced by the discrepancy because Romeo's identification of [Petitioner] as the shooter was never withheld from trial counsel. Therefore, trial counsel was aware of Romeo's pretrial identification of [Petitioner] as the shooter and could have expected testimony consistent with that identification at trial.

*Collins v. State*, 138 A.3d 475 (Table), 2016 WL 2585782, at *2-3 (Del. May 2, 2016). On appeal after remand, the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's Rule 61 motion. *Collins*, 2016 WL 2585782, at *4-5.

Petitioner initially filed a *pro se* habeas Petition, as well as a motion to appoint counsel. (D.I. 1; D.I. 4) The Federal Public Defender's Office ("FPD") filed a motion to join in Petitioner's motion to appoint counsel (D.I. 6), which the Court granted (D.I. 10). Petitioner, now represented by the FPD, filed an Amended Petition. (D.I. 18) The State filed an Answer, to which Petitioner filed a Reply. (D.I. 27; D.I. 37)

## III.   GOVERNING LEGAL PRINCIPLES

### A.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

3

(B)(i)  there is an absence of available State corrective process; or
(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To

4

demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner "must show not merely that the errors at . . . trial created a ***possibility*** of prejudice, but that they worked to his ***actual*** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**B. Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the last reasoned state court decision was "contrary to,

or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States," or the state court's decision was an unreasonable

determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2);

*see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).

"Deciding whether a state court's decision 'involved' an unreasonable application of federal

law or 'was based on' an unreasonable determination of fact requires the federal habeas court to

train its attention on the particular reasons – both legal and factual – why state courts rejected a state

prisoner's federal claims, and to give appropriate deference to that decision . . . ." *Wilson v. Sellers*,

138 S. Ct. 1188, 1191-92 (2018).

> This is a straightforward inquiry when the last state court to decide a
> prisoner's federal claim explains its decision on the merits in a reasoned
> opinion. In that case, a federal habeas court simply reviews the specific
> reasons given by the state court and defers to those reasons if they are
> reasonable.

*Id.* at 1192. However, when the relevant state court decision is not accompanied with reasons, "the

federal court should 'look through' the unexplained decision to the last related state-court decision

that does provide a relevant rationale. It should then presume that the unexplained decision

adopted the same." *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (explaining that deferential

standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion

explaining the reasons relief has been denied"). "In such circumstances, the presumption that the

federal claim was adjudicated on the merits may be rebutted – either by the habeas petitioner (for

the purpose of showing that the claim should be considered by the federal court *de novo*) or by the

State (for the purpose of showing that the federal claim should be regarded as procedurally

defaulted)." *Johnson v. Williams*, 568 U.S. 289, 301–02 (2013). The rebuttable presumption that a

6

state court has adjudicated a claim on the merits also applies "when a state-court opinion addresses some but not all of a defendant's claims." *Id.* at 298.

With respect to § 2254(d)(1), the Supreme Court has explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "incorrect" application of federal law is not necessarily an "unreasonable" one:

> [T]he most important point is that an **unreasonable** application of federal law is different from an **incorrect** application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

As for the amount of deference due a state court's factual findings, § 2254(d)(2) provides that federal habeas relief may be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the court proceeding." Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence;" this presumption of

correctness applies to both explicit and implicit findings of fact. *See also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). In the absence of explicit guidance from the Supreme Court on how to approach the interplay between §§ 2254(d)(2) and 2254(e)(1),[1] the Third Circuit has provided the following:

> [T]he language of § 2254(d)(2) and § 2254(e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the "evidence presented in the state-court proceeding," while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record.

> We therefore read § 2254(d)(2) and § 2254(e)(1) together as addressing two somewhat different inquiries. The fundamental prerequisite to granting the writ on factual grounds is consideration of the evidence relied upon in the state court proceeding. Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted.

> Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. In this inquiry, a petitioner may develop clear and convincing evidence by way of a hearing in federal court as long as he satisfies the necessary prerequisites. In the final analysis however, even if a state court's individual factual determinations are overturned, what factual findings remain to support the state court decision must still be weighed under the overarching standard of section 2254(d)(2).

---

[1] *See Wood v. Allen,* 558 U.S. 290, 300-01 (2010) (explicitly finding court did not need to determine relationship between §§ 2254(d)(2) and 2254(e) in Wood's case and, therefore, knowingly leaving "open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)").

*Lambert v. Blackwell*, 387 F.3d 210, 235-36 (3d Cir. 2004).  Particularly instructive is the Third

Circuit's following reasoning:

> We adopt no rigid approach to habeas review of state fact-finding.  In some circumstances, a federal court may wish to consider subsidiary challenges to individual fact-finding in the first instance applying the presumption of correctness as instructed by (e)(1).  Then, after deciding these challenges, the court will view the record under (d)(2) in light of its subsidiary decisions on the individual challenges.  In other instances, a federal court could conclude that even if petitioner prevailed on all of his individual factual challenges notwithstanding the (e)(1) presumption of their correctness, the remaining record might still uphold the state court's decision under the overarching standard of (d)(2).  In that event, presumably the (d)(2) inquiry would come first.

> Whatever the order of inquiry, however, two points are paramount.  First, both (d)(2) and (e)(1) express the same fundamental principle of deference to state court findings.  Second, before the writ can be granted, petitioner must show an unreasonable determination – under (d)(2) – in light of the entire record in the original state court trial.

*Id.* at 236 n.19.

## IV.    DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, asserting the

following claims: (1)(A) the Delaware Supreme Court erred when, in its Rule 61 appellate decision

after remand, it held that the "newly discovered evidence" of the altered photo array and Detective

Conner's related false testimony regarding the alteration was not prejudicial and did not amount to a

denial of Petitioner's due process right to a fair trial; and (B) the trial court erred by failing to exclude

Detective Conner's testimony regarding Ms. Romeo's statements as an inadmissible interpretive

narrative under 11 Del. C. § 3507;[2] (2) the State engaged in prosecutorial misconduct during

---

[2]The Amended Petition and Reply refer to both sub-arguments in Claim One as "Trial Court Error."  However, the first sub-argument of Claim One ("Claim One (A)") clearly challenges the Delaware state court decisions during and after the Rule 61 remand, while the second sub-argument of Claim One ("Claim One (B)") appears to challenge the trial court's original decision that

9

Petitioner's trial by: (a) admitting into evidence the altered photo array (State Exhibit 84) and Detective Collins' related false testimony; (b) arguing facts during the opening statement that were not produced during the trial; and (c) providing improper vouching during the closing argument; (3) ineffective assistance of trial counsel; (4) ineffective assistance of appellate counsel; (5) the trial court erred by giving an erroneous *Allen* jury instruction;[3] and (6) the cumulative effect of all of these errors requires relief.  The State filed an Answer.  (D.I. 27)  Petitioner filed a Reply.  (D.I. 37)

Formal pleadings drafted by lawyers are held to more stringent standards than allegations in pleadings drafted by *pro se* litigants.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) ("[A]llegations of the *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers.").  Petitioner is represented by counsel in this proceeding.  Unfortunately, the Petition does not identify the precedent or specific constitutional parameters purportedly applicable to several Claims.  Instead, the Petition asserts that Petitioner's "convictions and sentences are invalid under federal constitutional guarantees of due process, equal protection, effective assistance of counsel, confrontation, a fair trial, a fair and impartial jury of his peers, freedom from cruel and unusual punishment, and a reliable sentence due to trial court error." (D.I. 18 at 12)  Those general constitutional references do not always seem to align with the Petition's convoluted presentation of the Claims.  While Petitioner's Reply provides some specific citations to Supreme Court precedent, the framing of the Claims is still somewhat vague and

---

Detective Conner's testimony regarding Ms. Romeo's statement did not constitute an inadmissible interpretive narrative under § 3507.

[3]Claim Five in the Amended Petition consisted of two sub-arguments: (A) the trial court erred by giving an erroneous *Allen* jury instruction; and (B) the trial court erred by failing to provide a special eyewitness identification instruction.  (D.I. 18 at 45-47)  However, the Court will not address Claim Five (B) because Petitioner explicitly abandons Claim Five (B) in his Reply.  (D.I. 37 at 58)

convoluted.  For instance, the Reply asserts "*[u]nder all legal standards*, Detective Conner's false testimony and falsified evidence warrant reversal of [Petitioner's] conviction (Claims One, Two(A), Three(A), Three(G), Five(A))."  (D.I. 37 at 2) (emphasis added)  Petitioner's reference to "all legal standards" fails to provide sufficient clarity.  Although the Court has done its best to discern the federal constitutional framework for Petitioner's arguments, the Court cannot act as his attorney and make the arguments for him.

### A. Claim One (B): The Trial Court Improperly Admitted Detective Conner's Narrative Interpretation Of Romeo's Statements Under 11 Del. C. § 3507

As presented in the Amended Petition, Claim One (B) asserts that the trial court erred by rejecting defense counsel's argument that Detective Conner's testimony concerning Romeo's identification constituted an inadmissible narrative interpretation under 11 Del. C. § 3507.  (D.I. 18 at 28-29)  Petitioner's Reply seemingly provides additional support for this argument by alleging that the Delaware state courts "(1) disregarded the trial court's stated reasons for admitting Romeo's § 3507 statement via Detective Conner's testimony;  [and] (2) created a new, retroactive basis for admissibility that relied on the post-conviction testimony of Detective Conner."  (D.I. 37 at 6-7)  Although Petitioner asserts that the admission of the narrative interpretation violated his "constitutional rights and [was] prejudicial," Claim One (B) clearly challenges the Delaware state courts' resolution of a state law issue.  (D.I. 18 at 29)

It is well-settled that federal habeas relief is not available to correct state law errors.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue a writ on the basis of a perceived error of state law."); *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-

tuned review of the wisdom of state evidentiary rules."). Therefore, the Court will deny Claim One

(B) because it fails to present an issue cognizable on federal habeas review.

> **B. Claims One (A) and Two (A): The Admission Of The Altered Photo Array ("State Exhibit 84") And Detective Conner's False Testimony Concerning State Exhibit 84 Warrants Reversal Of Petitioner's Conviction**

Claims One (A) and Two (A) present due process claims based upon Detective Conner's

purportedly false testimony and alteration of State Exhibit 84.  Claim One (A) asserts that the

Delaware state courts committed error during and after the Rule 61 remand by failing to find that

the admission of Detective Conner's false testimony and State Exhibit 84 violated Petitioner's due

process rights.  The prosecutorial misconduct argument in Claim Two (A) asserts that the State

violated Petitioner's due process rights because it knew or should have known that Detective

Conner falsely testified about when he wrote the word "shooter" on State Exhibit 84.  Since the

underlying allegations Petitioner asserts in Claims One and Two (A) are related, the Court addresses

them together.

> **1. Claim One (A): After the Rule 61 remand, the Delaware Supreme Court erred by not concluding that the admission of State Exhibit 84 and Detective Conner's false testimony violated Petitioner's due process right to a fair trial**

In Claim One (A), Petitioner contends that the Delaware state courts committed factual and

legal errors during and after the Rule 61 remand by not finding that the admission of the altered

photo array and Detective Conner's testimony regarding Romeo's statement violated his due process

right to a fair trial warranting a reversal of his conviction.[4]  (D.I. 18 at 12)  The premise of Claim

---

[4]Claim One is not a model of clarity.  Petitioner presents Claim One in his Amended Petition as a broad factual description of errors he alleges occurred in his Rule 61 proceedings on remand, and premises his legal argument on numerous general constitutional principles.  For instance, Petitioner contends that his "convictions and sentences are invalid under federal constitutional guarantees of due process, equal protection, effective assistance of counsel, confrontation,  a fair trial, a fair and

One is that the Delaware state courts committed two errors during and after the Rule 61 remand by not concluding that "Detective Conner's false testimony and falsified evidence warrant reversal of [Petitioner's] conviction" and by not granting him a new trial.  (D.I. 37 at 2, 15)  The Court has already determined that one of the errors – the improper admission of Detective Conner's testimony under § 3507 (Claim One (B)) – asserts a state law issue that is not cognizable on federal habeas review.  *See supra* at Section IV.A.  Petitioner asserts that the Delaware state courts committed the other error on remand ("Claim One (A)") by "finding that an altered exhibit [State Exhibit 84] and perjured testimony was not prejudicial;" he specifically contends:

> The Superior Court erred when it ruled that [Petitioner] was not prejudiced by Detective Conner's false testimony that he wrote the word 'shooter' on the photo array contemporaneous with his interview with the alleged identification witness.  Had the jury learned of his falsification, it would have discredited his remaining testimony given that the jury was deadlocked after three days of deliberation and convicted [Petitioner] only after being given the *Allen* charge.

(D.I. 18 at 12)  Petitioner alleges that he was prejudiced by the introduction of the altered evidence (State Exhibit 84) and Detective Conner's perjured testimony because: (1) "[t]here was no in-court identification of [Petitioner] as a culprit other than that by Detective Conner or direct evidence" (D.I. 18 at 25); (2) "Detective Conner's shooter testimony caused the denial of the Motion for Judgment of Acquittal" (D.I. 18 at 27); and (3) it "was a close case for the jury" as reflected in the fact that the "jury deliberated for eleven hours over three days, deadlocked, and only convicted

_____

impartial jury of his peers, freedom from cruel and unusual punishment, and a reliable sentence due to trial court error."  (D.I. 18 at 12)  Petitioner's Reply identifies the applicable Supreme Court precedent for the related prosecutorial misconduct argument in Claim Two but does not provide any applicable precedent for Claim One.  Nevertheless, given the substantial overlap between Claim One and Claim Two(a), the Court understands Petitioner's primary focus in Claim One to be that the Delaware Supreme Court on remand violated his constitutional right to due process by not reversing his conviction.

[Petitioner] after the coercive *Allen* charge was given" (D.I. 18 at 28).  Relying on this argument, Petitioner then contends that the Delaware Supreme Court erred in affirming the Superior Court's denial of his Rule 61 motion, arguing that the Delaware "state courts violated his federal rights to due process by finding that Conner's altered exhibit [State Exhibit 84] and perjured testimony was not prejudicial." (D.I. 37 at 20)

Petitioner exhausted state remedies for Claim One (A)[5] by explicitly presenting Claim One's general argument of factual and legal error to the Delaware Supreme Court on post-conviction appeal upon return from remand.[6] (D.I. 18-12 at 5-15)  However, the Court must determine the applicable standard of review.[7]  Having carefully scrutinized the Delaware Supreme Court's post-

---

[5]Petitioner exhausted state remedies for both Claim One (A) and (B), and the Court's conclusion regarding the standard of review for Claim One (A) applies equally for Claim One (B).  However, as previously discussed, Claim One (B) is not cognizable.  Therefore, the instant discussion focuses on Claim One (A).

[6]For instance, the first argument in Petitioner's Opening Supplemental Memorandum on post-conviction appeal asserted that the "Superior Court committed legal error, made improper factual findings and abused its discretion in finding that the alteration of the photo array [State Exhibit 84], and [Detective Conner's] false testimony, did not constitute constitutional error supporting reversal of [Petitioner's] convictions." (D.I. 18-12 at 5)  The second argument in the Opening Supplemental Memorandum on post-conviction appeal asserted that Petitioner's "state and federal constitutional due process rights to a fair trial and right of confrontation were violated by the erroneous admission of the highly prejudicial out-of-court statement of Shakira Romeo as it was based upon altered evidence [State Exhibit 84] and [Detective Conner's] false testimony." (D.I. 18-12 at 13)

[7]Petitioner's position on the applicable standard of review for Claim One (A) is less than clear.  In the Amended Petition, Petitioner asserts that the Delaware Supreme Court's decision affirming the denial of his Rule 61 motion after determining that Petitioner suffered no prejudice from the admission of the altered photo array and Detective Conner's testimony "was contrary to and an unreasonable application of clearly established federal law, and involved an unreasonable application of the facts." (D.I. 18 at 28-29)  Petitioner's reference to the "contrary to" and "unreasonable application" language demonstrates Petitioner's reliance on § 2254(d)(1) and (2) as the applicable standard.  However, in his Reply, Petitioner contends that the "Court should review both the trial court error and the prosecutorial misconduct claim *de novo*." (D.I. 37 at 26)  In contrast, the State asserts that the Court must review the Claim under the deferential standard in § 2254(d)(1) and (2) because the Delaware Supreme Court adjudicated the merits of the Claim as the predicate issue underlying Petitioner's ineffective assistance of counsel claim. (D.I. 27 at 8)

conviction appellate decision in conjunction with the Parties' assertions and the record, the Court makes the following conclusions. First, since the "after discovered evidence" of the altered photo array was presented to the Superior Court on Rule 61 remand, the Court must review the factual decisions the Delaware state courts made during and after remand rather than the trial court's factual determinations. To the extent it is relevant, the Court concurs with the State's contention that the Delaware Supreme Court properly reviewed the Superior Court's factual findings on remand under the "clearly erroneous standard" set forth in *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).[8] After applying the "clear error" standard, the Delaware Supreme Court accepted as correct the

---

[8]The State essentially characterizes Claim One as challenging the factual basis for the Delaware Supreme Court's post-conviction appellate decision by describing the premise of Claim One to be that the state courts violated Petitioner's due process and confrontation rights by making clearly erroneous factual findings. (D.I. 27 at 11) With this focus, the State proceeds to argue that the Delaware Supreme Court applied the appropriate Supreme Court precedent governing claims of factual error articulated in *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985), when it reviewed the Superior Court's factual findings under the deferential "clearly erroneous" standard of review. (D.I. 27 at 9) The State contends that the Delaware Supreme Court's decision "to give deference to the Superior Court because those findings were not clearly erroneous was neither contrary to nor an unreasonable application of *Bessemer*" (D.I. 27 at 10), and concludes its position on the appropriate standard of review for Claim One by stating:

> [Petitioner], whether in state court or here, has failed to rebut the Superior Court's findings by clear and convincing evidence. The state court's findings were supported by the record made at a postconviction hearing. [Petitioner's] claim that the state courts violated his constitutional rights by making clearly erroneous factual findings is clearly without merit and the state courts' findings should be presumed correct for purposes of [Petitioner's] claims of ineffective assistance of counsel.

(D.I. 27 at 11-12) The Court views the more relevant question in this proceeding to be whether the Delaware state courts' factual findings satisfy the requirements of § 2254(d)(2) and § 2254(e)(1), not whether the Delaware Supreme Court applied the correct standard of review. Importantly, as explained more thoroughly in the text of the Opinion, the Court concludes that the Delaware state courts' factual determinations satisfy §§ 2254(d)(2) and (e)(1).

following factual findings made by the Superior Court: (1) Romeo identified Petitioner as the shooter during her interview; (2) Detective Conner added the word "shooter" to the photo array sometime after the discovery copy of the photo array was provided to the defense but prior to trial; (3) Detective Conner did not add the word "shooter" in bad faith or in response to the § 3507 issue that arose during the trial; (4) trial counsel was aware that Romeo had identified Petitioner as the shooter before trial and expected her to testify to that fact; and (5) Detective Conner's police report and affidavit of probable cause, authored well in advance of trial, reflected Romeo's pretrial identification of Petitioner as the shooter. *See Collins*, 2016 WL 2585782, at *5. Since Petitioner does not challenge these particular subsidiary factual findings, the Court presumes they are correct under § 2254(e)(1). In turn, after considering these subsidiary factual findings in the context of the totality of the evidence the Superior Court had before it during its evidentiary hearing on remand, the Court concludes that both the Superior Court and the Delaware Supreme Court reasonably determined the facts in light of the evidence presented to the Superior Court under § 2254(d)(2). The Superior Court was in the best position to weigh the evidence and make credibility determinations, and the Delaware Supreme Court was entitled to give deference to the Superior Court's factual findings. Thus, the Court accepts as correct the five specific factual findings mentioned above (that were also identified the by Delaware Supreme Court).

However, contrary to the State's implicit assertion, the Court's deference to the Delaware state courts' factual findings on remand does not end the Court's duty to determine whether the admission of the altered photo array and Detective Conner's testimony deprived Petitioner of his due process right to a fair trial.[9] Instead, the factual findings the Court has accepted as correct

---

[9]After focusing on the factual aspect of Claim One (A), the State argues that Petitioner's "claim that the state courts violated his constitutional rights by making clearly erroneous factual findings is

provide the starting point for the Court's inquiry into Petitioner's alleged constitutional violations –

not the ending point. Additionally, although Petitioner does not challenge the aforementioned five

specific factual findings, he does challenge the Delaware state courts' failure to make certain factual

findings,[10] asserting that the state courts: (1) ignored Detective Conner's perjury; and (2) ignored the

impact that the discovery of the photo array alteration and Detective Conner's perjury would have

had on Detective Conner's credibility. (D.I. 37 at 6-7) A review of the record demonstrates that

neither the Superior Court nor the Delaware Supreme Court on remand considered: (1) whether the

"after discovered evidence" concerning the timing of the alteration to State Exhibit 84 demonstrated

that Detective Conner's testimony on *voir dire* that he wrote the word "shooter" on the photo array

contemporaneously with Romeo's interview was false or constituted perjury;[11] or (2) whether

disclosing that information during the trial would have affected Detective Conner's credibility.[12]

---

clearly without merit and the state court's findings should be presumed correct for purposes of
[Petitioner's] claims of ineffective assistance of counsel." (D.I. 27 11-12) The State's brief reference
to Petitioner's "constitutional rights" essentially ignores the due process argument at issue in Claim
One (A).

[10]Petitioner also asserts that the Delaware state courts "(1) disregarded the trial court's stated reasons
for admitting Romeo's § 3507 statement via Detective Conner's testimony; (2) created a new,
retroactive basis for admissibility that relied on the post-conviction testimony of Detective Conner;
and [(3)] ignored that it was a very close case for the jury, which was deadlocked after three days of
deliberation." (D.I. 37 at 6-7) The first two assertions relate to Claim One (B) which, as previously
explained, asserts a state law issue that is not cognizable on federal habeas review. *See supra* at
Section IV.A.1. The Court views Petitioner's third assertion about it being a very close case for the
jury as a factor to be discussed when considering the materiality prong of the prosecutorial
misconduct alleged in Claim Two(A). *See infra* at Section IV.A.3.

[11]During the *voir dire* concerning Detective Conner's interview of Romeo, Detective Conner stated
that he wrote the words Romeo stated "by the various pictures" on State Exhibit 84 "while [he] was
interviewing [Romeo] on the park bench." (D.I. 30-3 at 133)

[12]Given the manner in which the Delaware Supreme Court framed the issue for remand, the
Superior Court limited its inquiry during the evidentiary hearing to the circumstances surrounding
the alteration of the photo array without considering Detective Conner's related testimony.

Since there are no state court factual findings with respect to the falsity or veracity of Detective

Conner's testimony on *voir dire* regarding when he wrote the word "shooter" on State Exhibit 84[13] or

the effect that information would have had on the jury's view of Detective Conner's credibility, the

Court is not constrained by § 2254(d)(2)'s deferential standard when considering these two particular

factual issues.  The Court will, therefore, review these factual contentions *de novo*.

Having accepted as correct the Delaware state courts' factual determination that Detective

Conner wrote the word "shooter" on the photo array sometime after the discovery copy of the array

was provided to the defense but before the trial commenced, the Court must conclude that

Detective Conner testified falsely during *voir dire* when he stated that he wrote the word "shooter"

on the array when he interviewed Romeo.  (D.I. 30-3 at 133)  Hence, the Court must move to the

next step of the analysis.

---

Whether or not the Delaware state courts' failure to consider the truthfulness of Detective Conner's related testimony was unreasonable is not at issue here.

[13]Whether or not a person committed perjury is a factual issue which, if addressed by the state court, is subject to the deferential standard set forth in § 2254(d)(2) and § 2254(e)(1). *See, e.g., Lambert*, 387 F.3d at *242-43.  If a post-conviction court reaches a credibility determination, that determination is also subject to the deferential standard set forth in § 2254(d)(2) and § 2254(e)(1). *See Campbell*, 209 F.3d at 290.  The Third Circuit has opined that,

> [w]e have not had occasion, to this point, to specifically address the deference we afford to credibility findings, as opposed to factual findings more generally, once we determine that AEDPA deference is inapplicable.  There is no question, however, that credibility findings in that context are also presumed correct absent "clear and convincing evidence" to the contrary, *Breakiron [v. Horn]*, 642 F.3d [126,] 131 [3d Cir. 2011)], because "[i]n cases where the AEDPA standards of review do not apply, federal habeas courts apply pre-AEDPA standards of review," *Jacobs*, 395 F.3d at 100, and pre-AEDPA, "federal habeas courts [had] no license to redetermine credibility of witnesses whose demeanor ha[d] been observed by the state trial court, but not by them," *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

*Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017), *as amended* (July 18, 2017).

Although Petitioner presented the federal due process/fair trial violation in Claim One (A) to the Delaware Supreme Court on post-conviction appeal, after applying "last reasoned state court decision rule" to the Delaware Supreme Court's Rule 61 appellate decision, the Court finds that the Delaware Supreme Court did not adjudicate the legal argument in Claim One (A) on the merits when it reviewed Petitioner's ineffective assistance of counsel claims. *See generally Collins*, 2016 WL 2585782, at *1-5. Rather, after explaining why it accepted the Superior Court's factual findings on remand concerning the alteration of State Exhibit 84, the Delaware Supreme Court focused on whether "the later discovery of the discrepancy between the two photograph" line-ups affected the Superior Court's initial Rule 61 conclusion that Petitioner failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), with his § 3507 argument that Detective Conner's testimony amounted to an inadmissible interpretive narrative, *see Collins*, 2016 WL 2585782, at *4-5. In other words, the Delaware Supreme Court analyzed the alteration of State Exhibit 84 solely in context of Delaware law and § 3507. When determining that Petitioner did not establish prejudice under *Strickland*, the Delaware Supreme Court did not address any possible due process implications resulting from the admission of falsified evidence and perjured testimony.[14] *See id.* Given these

---

[14]For instance, the Delaware Supreme Court held that Petitioner's ineffective assistance of appellate counsel argument "fails under the second prong of *Strickland*," because the Superior Court's correct conclusion regarding the admissibility of Detective Conner's testimony demonstrated that "there was no reasonable probability that appealing the issue would have been fruitful." *Collins*, 2016 WL 2585782, at *5. As for Petitioner's ineffective assistance of trial counsel argument, the Delaware Supreme Court opined that:

> [Petitioner] cannot demonstrate prejudice from trial counsel's failure to recognize the discrepancy. State's Exhibit 84 was not the only time where Detective Conner recorded that Romeo had identified [Petitioner] as the shooter. Detective Conner's police report and affidavit of probable cause reflect Romeo's pretrial identification of [Petitioner] as the shooter. Furthermore, trial counsel was aware that Romeo had identified Petitioner as the shooter before trial and

circumstances, AEDPA's deferential standard of § 2254(d)(1) is not applicable and the Court will review the Delaware Supreme Court's conclusion regarding the legal arguments in Claim One (A) *de novo*.

To reiterate, Claim One (A) alleges that the Delaware state courts erred on remand by failing to find that Detective Conner's alteration of State Exhibit 84 and false testimony prejudiced Petitioner and violated his federal constitutional right to due process. (D.I. 37 at 4)  Even on *de novo* review, a federal habeas court determines the constitutional claim based on clearly established federal law. *See Teague*, 489 U.S. 288; *Kater v. Maloney*, 459 F.3d 56, 63 (1st Cir. 2006) ("Kater's assumption that a federal court engaged in *de novo* review does not ask whether a particular claim is based on already clearly established federal law – would lead to an end-run around the *Teague* doctrine").  It is well-settled that a conviction obtained by the government's **knowing** use of perjured testimony violates due process, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  *See United States v. Agurs*, 427 U.S. 97 (1976); *Napue v. Illinois*, 360 U.S. 264, 269-71 (1959); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).  Notably, however, the Supreme Court has never held that a due process violation occurs when a defendant is convicted on the basis of perjured testimony when the government was unaware of such perjury at the time of the trial.  In turn, the Third Circuit also requires (among

---

expected her to testify to that fact at trial.  The State also introduced evidence that gunshot residue and [Petitioner's] DNA were found on the sweatshirt that both witnesses saw him wearing.  Further, the State presented the recording of Gibson identifying [Petitioner] in the lineup.  Therefore, it is not "reasonably likely the outcome would have been different" if trial counsel had identified the discrepancy.

*Id.*  The Delaware Supreme Court did not mention the Supreme Court cases typically identified when dealing with allegations of perjured testimony – such as *Napue*, *Giglio*, or *Agurs* – or Petitioner's general due process right to a fair trial.

other things) that a petitioner seeking to establish a due process violation must demonstrate that the government knew or should have known about the false testimony. *See Haskell v. Sup't Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017). Since Claim One (A) does not assert that the State knew or should have known that Detective Conner falsely testified about when he wrote the word "shooter" on State Exhibit 84, the Claim fails to assert a *prima facie* due process claim.[15] *See Howes v. Fields*, 565 U.S. 499, 505 (2012) ("clearly established law signifies the holdings . . . of [the Supreme] Court's decisions").

To the extent that Petitioner's contention regarding State Exhibit 84 should be construed as an assertion that the admission of State Exhibit 84 violated *Brady v. Maryland*, 373 U.S. 83 (1963), it is also unavailing. A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert*, 387 F.3d at 252. Here, since both the defense and the State had access to the unaltered discovery copy of the photo array and the altered copy of the photo array that was admitted at trial (State Exhibit 84), Petitioner cannot demonstrate that the State knowingly or inadvertently suppressed the fact that

---

[15]In his Reply, Petitioner attempts to gloss over the fact that Claim One (A) does not allege that the State knew or should have known that Detective Conner testified falsely by combining its argument for Claim One (A) with that for Claim Two (A), which does assert that the State knew or should have known the falsity of Detective Conner's testimony. But the claims are different, are pled differently, and are subject to different legal analyses. In particular, the prosecutorial misconduct argument in Claim Two (A) is procedurally defaulted because Petitioner did not present that argument to the Delaware Supreme Court on post-conviction appeal. His claims cannot simply be combined. Under the proper analysis, Claim One (A), which is exhausted and reviewable *de novo* in this proceeding, fails to assert a necessary element for finding a due process violation, whereas the perjury argument in Claim Two (A), which does assert the knowledge element, is procedurally defaulted and, therefore, reviewed under more limited terms.

21

Detective Conner altered State Exhibit 84.  Accordingly, the Court will deny Claim One (A) in its entirety as meritless.

> ## 2.  Claim Two (A): The State Violated Petitioner's Due Process Rights Because It Knew (Or Should Have Known) That Detective Conner Falsely Testified About When He Wrote The Word "Shooter" On State Exhibit 84

In Claim Two (A), Petitioner alleges that the State engaged in prosecutorial misconduct by admitting State Exhibit 84 into evidence and failing to correct Detective Conner's perjured testimony concerning Romeo's identification of Petitioner as the shooter.  (D.I. 18 at 30)  Citing *Mooney v. Holohan*, 294 U.S. 103,  112-13 (1935), *Napue v. Illinois*, 360 U.S. 264, 269 (1959), *Giglio v. United States*, 405 U.S. 15, 153-54 (1972), *United States v. Agurs*, 427 U.S. 97, 103 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), and other cases, Petitioner asserts: (1) "it is undisputed that [Detective] Conner provided false testimony and falsified evidence" (D.I. 37 at 14); (2) Detective Conner knew State Exhibit 84 and his testimony concerning Romeo's statement were false and his knowledge is imputed to the State; (3) the State had a duty to prevent, or at least discover, that Detective Conner tampered with evidence and testified falsely; and (4) Detective Conner's false testimony and falsified evidence was material.  (D.I. 37 at 11-20)  Petitioner contends that he exhausted state remedies for Claim Two (A) by presenting a "substantial equivalent" of the Claim to the Delaware Supreme Court on post-conviction appeal after remand.  (D.I. 37 at 20)  He then asserts that the Court should review Claim Two (A) *de novo* because the Delaware Supreme Court "failed to directly address the underlying prosecutorial misconduct issue."  (D.I. 37 25)

In contrast, the State contends that Petitioner did not present Claim Two (A) to the Delaware Supreme Court on post-conviction appeal after remand, explaining

> instead, [he] presented the claim that his constitutional rights were violated by the erroneous admission of Romeo's 11 Del. C. § 3507

> statement because it was based on the altered exhibit and related
> testimony.

(D.I. 27 at 15)

For exhaustion purposes, the crucial inquiry is whether the substance of the Petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim. *See Picard*, 404 U.S. at 278. A petitioner does not need to cite "book and verse on the federal constitution" in order to satisfy the exhaustion requirement. *Id.* Nevertheless, after carefully reviewing Petitioner's Opening Supplemental Memorandum and his Reply Supplemental Memorandum that he presented to the Delaware Supreme Court on post-conviction appeal after remand, the Court concludes that Petitioner did not exhaust state remedies for the prosecutorial misconduct argument presented in Claim Two (A). When viewed in context, it is clear that the first two arguments in Petitioner's Supplemental Reply on post-conviction appeal after remand present two sub-parts of the same argument regarding the Superior Court's legal and factual errors that he presents in Claim One of this proceeding. Significantly, although Petitioner's first argument in the Supplemental Reply on post-conviction appeal after remand explicitly refers to the legal and factual errors the Superior Court allegedly committed during the Rule 61 remand, and his third argument specifically refers to trial counsel's ineffective assistance, there is no explicit reference to "prosecutorial misconduct" anywhere in his post-conviction appellate Supplemental Reply. In addition, Petitioner's references to "impeachment evidence," "police officer malfeasance," "Detective Conner's malfeasance," and "fairness of the trial" were not sufficient to put the Delaware Supreme Court on notice that he was also asserting a false testimony/due process violation argument based on prosecutorial misconduct or a falsified evidence/*Brady* violation/prosecutorial misconduct argument. In other words, Petitioner did not "fairly present" to the Delaware Supreme

23

Court the instant argument that the State engaged in prosecutorial misconduct based on the contentions that the State should have known that (1) Detective Conner falsely testified and should have corrected that false testimony, and (2) Detective Conner presented falsified evidence.  Given these circumstances, the Court concludes that Petitioner did not exhaust state remedies for Claim Two (A).

At this juncture, any attempt by Petitioner to present Claim Two (A) to the Delaware state courts in a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1), and also as successive under Rule 61(i)(2)and Rule 61(d).[16]  Consequently, the Court must treat the instant argument as technically exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the argument absent a showing of cause and prejudice, or that a miscarriage of justice would occur if the Court did not review the claim.

In his Amended Petition, Petitioner makes a general assertion that any procedural default should be excused "because of the ineffective assistance of trial, appellate, and state post-conviction counsel." (D.I 18 at 10)  In his Reply, Petitioner asserts that he "can demonstrate cause and prejudice to overcome the default [of Claim Two (A)] based on post-conviction counsel's ineffective failure to raise the claim[]." (D.I. 37 at 45)  Since the circumstances surrounding Detective Conner's alteration of State Exhibit 84 and the possibility that Detective Conner's related testimony may be false were not revealed until the Rule 61 remand, the Court concludes that the focus of the instant procedural default analysis should be on post-conviction counsel's failure to raise Claim Two (A)

---

[16]After acknowledging the possibility that the Court would find Claim Two (A) unexhausted, Petitioner alternatively asserts that Claim Two (A) is technically exhausted but procedurally defaulted because a new Rule 61 motion would be barred as untimely and successive. (D.I. 37 at 44-45)

during the Rule 61 remand and on post-conviction appeal after remand, rather than on trial or

appellate counsels' actions during the original criminal proceeding and appeal.

Navigating the convoluted procedural default issues presented by this unique factual and

procedural situation would be more complicated than reaching the merits of Claim Two (A).[17]  Thus,

---

[17]Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner asserts that post-conviction counsel's ineffective assistance provides cause for his procedural default of Claim Two (A).  (D.I. 37 at 44-49)  In *Martinez*, the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  *See id.* at 16-17.  "The *Martinez* Court made clear, however, that this is a narrow exception . . . [that] applies only to attorney error in the initial-review collateral proceedings, not appeals from those proceedings."  *Norris v. Brooks*, 794 F.3d 401, 404-05 (3d Cir. 2015).  As explained by the Third Circuit, the reason for *Martinez*'s very narrow applicability seems to be "that the [Supreme] Court was concerned only about cases in which the error of a prisoner's collateral review attorney results in 'no state court at any level' hearing the prisoner's claim and the claim being defaulted for purposes of habeas review in a federal court."  *Id.* at 404-05.  Even after *Martinez*, there is no constitutional right to counsel during a collateral proceeding.  *See, e.g., Coleman*, 501 U.S. at 752 (holding there is no right to counsel in collateral proceedings); *Martinez*, 566 U.S. at 16 (stating that "rule of *Coleman* governs in all but the limited circumstances recognized here"); *Norris*, 794 F.3d at 405) ("Outside of these 'limited circumstances', *Martinez* made clear that Coleman remains the law.").

In the Court's view, *Martinez* does not provide an avenue for excusing the default of Claim Two (A).  First, Claim Two (A) asserts a prosecutorial misconduct argument, not an argument that trial counsel provided ineffective assistance by failing to allege the prosecutorial misconduct described in Claim Two (A).  *See Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017) ("On its face, *Martinez* provides no support for extending its narrow exception to new categories of procedurally defaulted claims."); *but see, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365 (3d Cir. 2018) (applying *Martinez* to excuse post-conviction counsel's default of Petitioner's defaulted ineffective assistance of counsel claim in order to provide cause to overcome default of Petitioner's stand-alone Confrontation Clause claim).  Second, the procedural default was caused by post-conviction counsel's failure to present Claim Two (A) on post-conviction appeal, rather than his failure to present it during the initial post-conviction proceeding.

The Court recognizes no state court at any level heard Claim Two (A) because Detective Conner's alteration of State Exhibit 84 was not revealed until the Rule 61 remand, meaning that only post-conviction counsel could have asserted that Detective Conner's testimony on *voir dire* did not correspond with the Superior Court's factual finding on remand that Detective Conner altered State Exhibit 84 after his interview with Romeo.  It would appear, however, that the Court cannot excuse the instant default on the basis that doing so would effectuate the underlying intent of *Martinez* to avoid such a situation, because: (1) Claim Two (A) is not an ineffective assistance of trial counsel

in the interest of judicial economy, the Court will exercise its discretion and proceed to the merits of Claim Two (A). *See* 28 U.S.C. 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Rhines v. Weber*, 544 U. S. 269, 277 (2005) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

In order to prevail on the instant argument of prosecutorial misconduct, Petitioner must demonstrate: (1) Detective Conner committed perjury; (2) the State knew or should have known of Detective Conner's perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *See Haskell*, 146 F.3d at 146. *Lambert*, 387 F.3d at 242. The Court will address the elements *in seriatim*.

### a. Prosecutorial misconduct based on Detective Conner's perjury/false testimony

#### i. Perjury/false testimony and the State's knowledge

Perjury is committed when a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see also United States v. Rose*, 215 F.2d 617, 622-23 (3d Cir. 1954) ("Perjury is the willful, knowing and corrupt giving, under oath, of false testimony material to the issue or point of inquiry."). As previously explained, during the Rule

---

claim; and (2) the default occurred on post-conviction appeal and not during the initial post-conviction proceeding. Moreover, since there is no constitutional right to counsel during a state collateral proceeding, the Court cannot consider the issue of post-conviction counsel's ineffectiveness in Petitioner's Rule 61 proceeding, either during the initial Rule 61 proceeding or Rule 61 appeal, as an independent claim.

61 remand, the Superior Court did not consider the veracity of Detective Conner's testimony on *voir dire* about when he wrote the word "shooter" on State Exhibit 84.  Consequently, under the applicable *de novo* standard of review, Petitioner may establish that Detective Conner's testimony constituted perjury if he can prove the same by a preponderance of the evidence.  *See, e.g., Jefferson v. GDCP Warden*, 941 F.3d 452, 473 (11th Cir. 2019) (explaining that when state court's fact-finding is "stripped" of § 2254(d) presumption of correctness, "petitioner then must establish the facts necessary to support his claim by only a preponderance of the evidence"); *Reyes v. Ercole*, 2018 WL 1517204 at *5 (S.D.N.Y. Mar. 27, 2018).

The following background information provides relevant context for the instant issue. Detective Conner did not record his interview with Romeo but, instead, took notes on his notepad and on the photo array he showed to Romeo.  (D.I. 18-11 at 5)  During Petitioner's trial, Romeo testified that she was present when the shooting occurred and heard gunshots, but she could not positively identify Petitioner as the shooter.  (D.I 18-11 at 4-5)  She also testified she spoke with Detective Conner about the shooting but did not remember what she said.  (D.I 18-11 at 5)  When Romeo stated she did not remember what she had told Detective Conner during the interview, the State asked if it could "call a witness [that is, Detective Conner] pursuant to 11 Delaware Code, Section 3507."  (D.I. 31-3 at 129)  The defense requested "an opportunity to *voir dire* the detective outside the presence of the jury to make sure that what he's telling us are the exact words of the witness as he is required by case law, and he doesn't add his own recollection . . . of what was said." (D.I. 31-3 at 131)  The *voir dire* of Detective Conner took place outside the presence of the jury (*id.* at 131-32); the following excerpt from that *voir dire* focuses on when Detective Conner wrote the words on the photo array he showed Romeo during the interview that was identified as State Exhibit 84:

        STATE:       Do you recognize what State Exhibit 84 is?

27

| CONNER: | Yes. |
|---------|------|
| STATE: | And what is it? |
| CONNER: | It's a photo-lineup with a photo of [Petitioner]. |
| STATE: | And did you show – is that what you showed Ms. Romeo on the park bench? |
| CONNER: | I did. |
| STATE: | And there's some words written by the various pictures.  Is that right? |
| CONNER: | Yes, sir. |
| STATE: | And did you write those words? |
| CONNER: | I did. |
| STATE: | And did you write them while you were interviewing her on the park bench? |
| CONNER: | I did. |
| STATE: | And are those words that she said or words that you were saying. |
| CONNER: | Those are words she said, and I wrote them down for the individuals. |

(*Id.* at 133)

During the Rule 61 remand, Detective Conner was asked "whether it was possible that as he was preparing the case for trial, he just added the word 'shooter' to State's Exhibit 84 because that's what he recalled Romeo saying."  (D.I. 18-11 at 16)  As summarized by the Superior Court on remand,

> Det.  Conner responded, "[b]eing over the course of time, sitting here going over this, my gut tells me no, but obviously, I'm thinking it over now.  But I have to go with my gut."  Upon further questioning, however, Det. Conner amended his answer and said, "I'm going to

28

have to say it's possible." At the conclusion of his testimony at the hearing, Det. Conner finalized his explanation of the discrepancy as follows:

ANSWER:      I do not recall ever going back to that photo array and writing "shooter." [(D.I. 31-5 at 14)]

*                              *                              *

QUESTION:   Okay. And so you – as you stand here today, looking back, you can't explain how the word "shooter" appears on the original, but does not appear on the copy of the original that you made?

ANSWER:      Do I know why it's not there?

QUESTION:   Yes.

ANSWER:      All I know is I didn't delete it.

QUESTION:   Okay.   And it's possible that you added "shooter" on the original, as you previously testified?

ANSWER:      My gut says no, but I'm going to say is it a possibility?  Yes, but I don't believe that's the case.

(D.I. 18-11 at 16; D.I. 31-5 at 14)  "The [Superior] Court questioned Det. Conner as to what his

note in Court Exhibit 3 stating 'Id'd [Petitioner]' meant, to which he explained that it meant Romeo

identified the individual in position Number 3 as the shooter wearing the brown sweatshirt with the

white lettering that went by her with Troy Faison." (D.I. 18-11 at 17)

Detective Conner's testimony during the evidentiary hearing raises the possibility that he was

confused about when he wrote the word "shooter" on the array, which could also lead to the

conclusion that his testimony on *voir dire* was due to the same confusion or faulty memory and was

not intentionally false.  If Detective Conner did not have a "willful intent" to deceive when he

29

testified, then his testimony would not constitute perjury.  However, having accepted as correct the

Delaware state courts' factual determination that Detective Conner wrote the word "shooter" on the

photo array sometime after the discovery copy of the array was provided to the defense but before

the trial commenced,[18] and comparing that factual determination with Detective Conner's *voir dire*

testimony in the aforementioned excerpt, the Court is constrained to conclude that Detective

Conner falsely testified on *voir dire* by stating that he wrote the word "shooter" on the array when he

interviewed Romeo.[19]

---

[18]The Superior Court made this factual finding after hearing Detective Conner's statement regarding his "gut" feeling about when he wrote the word "shooter" and witnessing his demeanor, and still made the factual finding that Detective Conner wrote the word "shooter" after his interview of Romeo.  Recently, the Third Circuit reiterated that "'[a]ssessments of witness credibility . . . are wrapped up in evaluations of demeanor that a trial judge is in a better position to decide,' and we defer to such assessments unless there is clear error." *C. G. B. v. Lucia*, 755 F. App'x 123, 126 (3d Cir. 2018) (quoting *United States v. Brown*, 631 F.3d 638, 643 (3d Cir. 2011)).

[19]The State does not address whether Detective Conner's testimony constituted perjury.  For instance, with respect to Claim One, the State entirely avoids the issue by focusing on the standard of review to be accorded to the Superior Court's factual determinations on remand, none of which dealt with the issue of Detective Conner's false testimony or the State's knowledge of that falsity. As for Claim Two (A)'s allegation that the State engaged in prosecutorial misconduct by admitting the altered photo array and failing to correct Detective Collins' perjured testimony, the State contends that the argument is procedurally defaulted and only briefly addresses the issue on the merits – asserting there was no prosecutorial misconduct because the State discovered and revealed the discrepancy between the two photo arrays during the Rule 61 appeal, stating:

> The Delaware Supreme Court found that during the pendency of the appeal of the Superior Court's denial of postconviction relief, "the State learned that there was a discrepancy between the photo array that Romeo used to identify [Petitioner], which the State admitted at trial, and the copy the State had sent to [Petitioner's] attorney in discovery." By making this finding, supported by the record and conceded by [Petitioner], the Delaware Supreme Court implicitly found that no prosecutorial misconduct at trial occurred, and thus the analysis ends.

(D.I. 27 at 18)  However, the fact that the State discovered the discrepancy while preparing for Petitioner's post-conviction appeal and revealed it to the Delaware Supreme Court does not address

Having determined that Detective Conner falsely testified, the next issue is whether the State knew or should have known that Detective Conner's testimony was false. The record demonstrates that the State was not actually aware at the time of Petitioner's trial that Detective Conner falsely testified during the § 3507 *voir dire* about when he wrote the word "shooter" on State Exhibit 84.[20] However, since the State provided the discovery copy of the photo array to the defense prior to the trial (which did not have the word "shooter" on it) and then used and admitted State Exhibit 84 during the trial (which did have the word "shooter" on it),[21] the Court concludes that the State should have known that there was a discrepancy between the discovery copy of the photo array and State Exhibit 84. In turn, given the Delaware State courts' factual determination (and this Court's acceptance of that factual determination) that Detective Conner wrote the word "shooter" on State Exhibit 84 after the State provided the discovery copy of the photo array to the defense, the Court is constrained to conclude that the State should have known that Detective Conner's testimony on *voir dire* was false.[22]

---

the State's failure to discover and address the discrepancy and correct the perjury during Petitioner's criminal trial.

[20]The State has provided excerpts of the transcript from the evidentiary hearing on remand, but not the entire transcript. The Court's conclusion that the State did not knowingly provide two inconsistent photo arrays is based on those excerpts.

[21]During the Rule 61 remand, Detective Conner explained that "he retained sole custody of State's Exhibit 84 until he turned it over to the prosecutor as evidence, at some point at or near trial. The prosecutor would then present it to him during his testimony for identification." (D.I. 18-11 at 15)

[22]It is well-established that a "prosecutor has a duty to learn of any favorable [defense] evidence known to the others acting on the government's behalf in the case, including the police," and that a government agent's knowledge of exculpatory evidence is imputed to the prosecution. *Kyles v. Whitley*, 514 U.S. 419 at 437-438 (1995); *see also Strickler*, 527 U.S. at 280-81. However, neither the Supreme Court nor the Third Circuit have expressly recognized or rejected the principle that the false testimony provided by a police officer should be imputed to the prosecution. *See, e.g., Reis-Campos v. Biter*, 832 F.3d 968, 977 (9th Cir. 2016) ("While the Supreme Court has clearly established that the prosecution's *Brady* duty encompasses evidence known only to police investigators and not

### ii. Whether the false testimony went uncorrected

The State appears to suggest that it "corrected" Detective Conner's false testimony during

the Rule 61 proceeding when it discovered the discrepancy between the two photo arrays and

requested an evidentiary hearing on the issue.  For instance, the State asserts:

> The Delaware Supreme Court found that during the pendency of the
> appeal of the Superior Court's denial of postconviction relief, "the
> State learned that there was a discrepancy between the photo array that
> Romeo used to identify [Petitioner], which the State admitted at trial,
> and the copy the State had sent to [Petitioner's] attorney in discovery."
> By making this finding, supported by the record and conceded by
> [Petitioner], the Delaware Supreme Court implicitly found that no
> prosecutorial misconduct at trial occurred, and thus the analysis ends.

(D.I. 27 at 18)  To the extent the Court correctly understands the State's argument, it is unavailing.

The relevant issue is whether the false testimony went uncorrected during the trial at which it

occurred; not whether it went uncorrected when discovered at a later date.  *See Napue*, 360 U.S. at

269 ("[T]he State, although not soliciting false evidence, allows it to go uncorrected when it

appears."); *Lambert*, 387 F.3d at 242 (noting that when "the prosecution's case includes perjured

testimony and the prosecution knew, or should have known, of the perjury . . . [or] when the

government, although not soliciting false evidence, allows it to go uncorrected when it appears at

trial[,] . . . the conviction must be set aside if there is any reasonable likelihood that the false

---

to the prosecutor, it is not clearly established that a police officer's knowledge of false testimony
may be attributed to the prosecution under *Napue*.").  In this case, the Court does not need not to
address whether knowledge of Detective Conner's testimony is imputed to the State, because the
existence of the discrepancy between the discovery photo array and State Exhibit 84, along with the
fact that both documents were provided by the State, demonstrates that the State should have
known something was amiss with Detective Conner's *voir dire* testimony regarding the time at which
he wrote the word "shooter" on State Exhibit 84.

testimony could have affected the judgment of the jury."). In this case, there is no doubt that the State did not correct Detective Conner's false testimony during Petitioner's trial.

To summarize the analysis to this point, Petitioner has satisfied the first three elements of a *Napue*/prosecutorial misconduct claim: (1) Detective Conner lied when he testified during the § 3507 *voir dire* that he wrote the word "shooter" on the photo array during his interview of Romeo; (2) the State should have known that Detective Conner lied because it had access to both versions of the photo array; and (3) the State did not correct Detective Conner's testimony during the trial. The final element for the Court to consider is whether Detective Conner's false testimony was material.

### iii. Materiality

For the purpose of a perjury analysis, testimony is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Haskell*, 866 F.3d at 149. Petitioner first contends that Detective Conner's false testimony on *voir dire* was material because "the trial court would not have had a basis under . . . § 3507 to allow in Conner's testimony that Romeo had identified [Petitioner] as the shooter" (D.I. 37 at 5-6) if it had known that the word "shooter" was not written contemporaneously with Detective Conner's interview of Romeo (D.I. 37 at 16). He asserts that Romeo's § 3507 statement would not have been admissible if Detective Conner had ben truthful. (D.I. 37 at 16) According to Petitioner, "the jury would not have heard that Romeo identified [Petitioner] as the shooter, just that she identified him," which would have been "less damaging" to Petitioner. (D.I. 18-11 at 27)

Contrary to Petitioner's assertion, this argument does not demonstrate the materiality of Detective Conner's perjured testimony. During the Rule 61 remand, the Superior Court determined that Detective Conner's notes were taken contemporaneously with his interview of Romeo, and that those notes "were a sufficient reflection of Romeo's words during the interview to satisfy § 3507."

33

(*Id.* at 34)  After noting that "Romeo did identify [Petitioner] as the shooter during her interview

with Det. Conner" (*id.*), the Superior Court concluded that "whether the word 'shooter' was actually

written contemporaneous with the statement or later added is irrelevant under [the] admissibility

analysis of § 3507, because the dispositive fact in that analysis is that Ms. Romeo did say the word

'shooter' in her statement (*id.* at 35).  In other words, Romeo's § 3507 statement, presented via

Detective Conner's testimony, would have been admitted even if the discrepancy between the

discovery copy of the photo array and State Exhibit 84 had been discovered during the § 3507 *voir*

*dire*.[23]

The Delaware Supreme Court affirmed the Superior Court's remand decision on post-

conviction appeal.  First, the Delaware Supreme Court determined that there was "ample evidence"

to support the [Superior] [C]ourt's determination" that Romeo identified Petitioner as the shooter

during her interview with Detective Conner, including: (1) the fact that Detective Conner testified

consistently about the substance of Romeo's statements at trial and at the Rule 61 evidentiary

hearing; (2) the fact that defense counsel was aware that Romeo had identified Petitioner as the

shooter before the trial and expected her testify to that fact during the trial; and (3) the fact

Detective Conner's police report and affidavit of probable cause, which were written long before

trial, reflect Romeo's pretrial identification of Petitioner as the shooter.  *See Collins*, 2016 WL

2585782, at *5.  The Delaware Supreme Court then concluded that:

> The fact that Detective Conner did not write the word "shooter" on
> the photo array contemporaneously with Romeo's statement, though
> imprudent, does not transform his trial testimony into an interpretive
> narrative.  The law requires that the detective accurately represent the

---

[23]The Superior Court did not explicitly state that Detective Conner's testimony would have been
admitted even if the discrepancy had been discovered.  However, it implicitly endorsed that view by
stating, "[w]ith this analysis, the Court finds that the outcome at trial, had Trial Counsel realized the
discrepancy and objected to it, would not have been any different."  (D.I. 18-11 at 35)

> witness's actual statement and not give a personal interpretation of the
> statement. In this case, Romeo identified [Petitioner] as "the shooter"
> during the interview. Therefore, the Superior Court properly
> determined that the statement was not an interpretive narrative.

*Collins*, 2016 WL 2585782, at 5.

Based on the foregoing, the Court rejects Petitioner's argument that Romeo's § 3507

statement would not have been admissible if Detective Conner had been truthful. Therefore,

Petitioner's first attempt to demonstrate the materiality of Detective Conner's testimony regarding

when he wrote the word "shooter" on State Exhibit 84 is unavailing.

Next, Petitioner contends that Detective Conner's perjured testimony was material because

revealing Detective Conner's actions "would have destroyed Detective Conner's credibility and, as a

result, the credibility of the prosecution itself." (D.I. 37 at 17)  Again, the Court disagrees.  During

the Rule 61 remand, the Superior Court heard Detective Conner's possible explanations for the

discrepancy and had an opportunity to observe Detective Conner's demeanor and assess his

credibility.  Notably, even after finding that Detective Conner did not write the word "shooter" on

State Exhibit 84 contemporaneously with his interview of Romeo, the Superior Court still concluded

that Romeo identified Petitioner as the shooter during her interview with Detective Conner and

viewed as irrelevant the timing of Detective Conner's alteration of State Exhibit 84.  If the timing of

Detective Conner's alteration to State Exhibit 84 did not affect the substance of Romeo's § 3507

statement for admissibility purposes, it logically follows that Detective Conner's testimony regarding

the timing of his alteration did not affect the substance of Romeo's § 3507 statement.  In addition,

another eyewitness, Violet Gibson, provided a recorded statement to Detective Conner that

implicated Petitioner in the murders.

35

Given Gibson's identification, Petitioner cannot demonstrate a reasonable likelihood that the jury would not have convicted him without Romeo's identification. Consequently, while the falsity of Detective Conner's testimony about when he wrote the word "shooter" on State Exhibit 84 may have been used to impeach Detective Conner's credibility, the falsity of Detective Conner's testimony would not have "destroyed the credibility" of Romeo's identification of Petitioner or the credibility "of the prosecution itself" (D.I. 37 at 17), especially since there was another identification of Petitioner.

Accordingly, the Court concludes that the State did not engage in prosecutorial misconduct by presenting Detective Conner's perjured testimony. Instead, that testimony was not material.

### b. Prosecutorial misconduct/*Brady* violation based on Detective Conner's falsified evidence

Petitioner also argues that the State violated *Brady v. Maryland* and committed prosecutorial misconduct when it failed to disclose Detective Conner's falsification of State Exhibit 84. (D.I. 37 at 18) To reiterate, a petitioner establishes a *Brady* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler*, 527 U.S. at 281-82. Once again, however, since the defense had access to the unaltered discovery copy of the photo array and the altered copy of the photo array that was admitted at trial (State Exhibit 84), Petitioner cannot demonstrate that the State knowingly or inadvertently suppressed the fact that Detective Conner altered State Exhibit 84. Accordingly, the Court will deny as meritless the portion of Claim Two (A) premised on *Brady*.

## C. Claims Two (B) and (C): Prosecutorial Misconduct

In Claim Two (B), Petitioner asserts that the State "committed misconduct during its opening statements when it proffered evidence that the owner of the car – Brineka Neal – would tell the jury, among other things, that [Petitioner] had possession of her car at the time of the shooting, that she could not reach him on the phone, and that there was something different about the way he returned the car to her this time. The State never presented that witness." (D.I. 37 at 49)  In Claim Two (C), Petitioner contends that the State misrepresented "the facts of the eyewitnesses' out-of-court statements" and also improperly vouched for witness Gibson. (D.I. 18 at 32; D.I. 37 at 52)  The State asserts, and Petitioner concedes, that Petitioner did not present Claims Two (B) and (C) to the Delaware Supreme Court on direct appeal or post-conviction appeal, and that he cannot present the arguments in a new Rule 61 motion at this juncture. (D.I. 27 at 15-20; D.I. 37 at 43-53)  As such, the two prosecutorial misconduct arguments are procedurally defaulted, which means that the Court cannot review their merits absent a showing of cause and prejudice, or a showing that the Court should review their merits in order to prevent a miscarriage of justice.

In his Reply, Petitioner cites *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), and attempts to establish cause for his default of Claims Two (B) and (C) by blaming post-conviction counsel's failure to raise the prosecutorial misconduct arguments asserted therein during his Rule 61 proceeding. (D.I. 37 at 45-49)  In *Martinez*, 566 U.S. at 16-17, the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. In order to obtain relief under *Martinez*, a petitioner must demonstrate that: (1) the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*; (2) the underlying ineffective assistance of trial counsel claim is substantial; and (3) petitioner was prejudiced. To show

37

that a claim is "substantial" under *Martinez*, a petitioner must point to evidence demonstrating that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must submit at least ***some*** evidence tending to show that (a) trial counsel performed deficiently in handling some aspect of pretrial or trial duties and (b) the deficient performance harmed the defense, in that there is a reasonable probability there would have been a different outcome at trial in the absence of counsel's deficient performance. *See Strickland*, 466 U.S. at 695-96. "[W]hether a claim is substantial is a threshold inquiry that does not require full consideration of the factual or legal bases adduced in support of the claims." *Bey v. Sup't Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) (internal quotation marks omitted).

Contrary to Petitioner's argument, *Martinez* does not provide cause for his default of Claims Two (B) and (C). These two Claims assert prosecutorial misconduct arguments, not arguments that trial counsel provided ineffective assistance by failing to allege the prosecutorial misconduct described in Claims Two (B) and (C). Therefore, *Martinez* is inapplicable.

Petitioner also contends that his default of Claims Two (B) and (C) should be excused because trial and appellate counsel ineffectively failed to object to the prosecutorial misconduct presented in the Claims, and then post-conviction counsel ineffectively failed to assert the ineffective assistance of trial and appellate counsel Claims in his Rule 61 proceeding.[24] This multi-layered ineffective assistance of counsel allegation still does not establish cause for Petitioner's default. First, since Petitioner did not raise these particular ineffective assistance allegations in his Rule 61 motion, his ineffective assistance of trial and appellate arguments are themselves

_____

[24]In his Amended Petition, Petitioner makes a general assertion that any procedural default should be excused "because of the ineffective assistance of trial, appellate, and state post-conviction counsel." (D.I 18 at 10)

38

procedurally defaulted, and cannot constitute cause for Petitioner's default of Claims Two (B) and (C), unless he can demonstrate cause and prejudice for the procedurally defaulted ineffective assistance allegations. *See Edwards*, 529 U.S. at 453-54; *Tome v. Stickman*, 2006 WL 357871, at *4 (3d Cir. 2006).

Second, Petitioner unsuccessfully relies on *Martinez v. Ryan* and attempts to establish cause for his default of the instant ineffective assistance of trial and appellate counsel arguments by blaming post-conviction counsel for not raising the ineffective assistance of trial/appellate counsel arguments in his Rule 61 proceeding. The narrow exception articulated in *Martinez* only applies to allegations concerning trial counsel's ineffectiveness, not claims alleging the ineffectiveness of appellate counsel. *See Davila*, 137 S.Ct. at 2065 (declining "to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel"). In turn, Petitioner's reliance on *Martinez* is unsuccessful for the same reason discussed above, namely, because Claims Two (B) and (C) assert prosecutorial misconduct arguments, not arguments that trial counsel provided ineffective assistance by failing to allege the prosecutorial misconduct described in Claims Two (B) and (C). *See id.* ("On its face, *Martinez* provides no support for extending its narrow exception [that applies to defaulted ineffective assistance of trial counsel claims] to new categories of procedurally defaulted claims."); *but see, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365 (3d Cir. 2018) (applying *Martinez* to excuse post-conviction counsel's default of Petitioner's defaulted ineffective assistance of counsel claim in order to provide cause to overcome default of Petitioner's stand-alone Confrontation Clause claim). In other words, Petitioner only mentions post-conviction counsel's failure to raise the issue of trial counsel's ineffectiveness as a roundabout method to establish cause for his default of his underlying prosecutorial misconduct arguments. The limited holding of *Martinez* does not stretch broadly enough to make this argument

39

meritorious. *See Davila*, 137 S.Ct. at 2065 ("On its face, *Martinez* provides no support for extending its narrow exception to new categories of procedurally defaulted claims.").

*Martinez* cannot provide cause for Petitioner's default of Claims Two (B) and (C) for the additional reason that the underlying ineffective assistance of trial counsel allegations are not substantial. As explained in Section IV.d.2(d), Petitioner's argument that trial counsel was ineffective for failing to move for a mistrial when the State did not present Brineka Neal's testimony that had been mentioned during opening statements lacks merit. Therefore, this particular ineffective assistance of trial counsel claim is insubstantial and cannot excuse the procedural default of Claim Two (B).

Second, Petitioner's argument that trial counsel was ineffective for not objecting to the State's inappropriate vouching of Ms. Gibson's recorded out-of-court statement is also insubstantial because it lacks merit. During the closing in Petitioner's case, the State argued that while Gibson was a reluctant trial witness, she had made a statement to the police at the time of the murders that implicated Petitioner. (D.I. 27 at 19) The State asked the jury to evaluate whether the witnesses had a motive to lie when they were interviewed by the police a few days after the murder (*id.*), and argued:

> Now, when you think about it and you recall what you heard during the audio tape of Violet Gibson, didn't she at that time sound like she was trying to help Detective Conner and she was trying to identify who she's seen? That's a credible identification and you should give it great weight when you're deliberating about this case.

(*Id.* at 20)

In closing statements, "[i]t is fundamental that counsel may argue reasonable inferences from the evidence, but may not 'misstate evidence.'" *United States v. Fulton*, 837 F.3d 281, 306 (3d Cir. 2016). "[T]he prosecutor is entitled to considerable latitude in summation to argue the evidence and

any reasonable inferences that can be drawn from that evidence." *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir. 1982). The above excerpt from the State's closing argument demonstrates that the State did not misstate the content of Gibson's recorded statement but, rather, attempted to draw a reasonable inference from it. In short, defense counsel did not perform ineffectively by failing to object to the State's closing.

For all of the above reasons, the Court concludes that Petitioner has not established cause for his default of Claims Two (B) and (C). In the absence of cause, the Court need not address the issue of prejudice. Additionally, Petitioner has not demonstrated that the miscarriage of justice exception applies, because he has not provided any new, reliable evidence of his actual and factual innocence. Accordingly, the Court will deny Claims Two (B) and (C) as procedurally barred from federal habeas review.[25]

### D. Claim Three: Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel provided ineffective assistance by failing to: (A) notice the discrepancy between the discovery copy of the photo array and State Exhibit 84; (B) present an expert on the fallibility of eyewitness identification; (C) request a special jury instruction on

---

[25]Petitioner also appears to believe he asserted a fourth prosecutorial misconduct claim, which he refers to as "Claim Two (D)." (D.I. 37 at 43, 53) However, Claim Two (D) in the Amended Petition is titled "D. Conclusion" and asserts the following:

> The prosecutorial misconduct throughout trial was severe and pervasive, prejudicial, and had a substantial and injurious effect on the verdict. Initial post-conviction counsel's failure to raise Sections (B) through (C) above rendered him ineffective, and provides a vehicle for this Court to address these claims under *Martinez v. Ryan*.

(D.I. 18 at 32-33) Given Petitioner's presentation, the Court views subsection D of Claim Two as both a conclusion for his prosecutorial misconduct arguments and an attempt to demonstrate cause for his default of his prosecutorial misconduct arguments. Consequently, the Court will not address "Claim (D)" as a separate argument.

eyewitness identification; (D) conduct an independent investigation; (E) move for a mistrial based upon the State's failure to produce Neal as a witness; (F) preserve the record for appeal; and (G) object to the chief investigating officer's testimony about eyewitness Violet Gibson's testimony. The record reveals, and Petitioner concedes,[26] that he only presented Claims Three (A) and (G) to the Delaware state courts, and the Delaware Supreme Court denied Claims Three (A) and (G) as meritless.  In turn, the record reveals, and Petitioner concedes, that Claims Three (B) - (F) are unexhausted.  Given these circumstances, Petitioner will only be entitled to habeas relief for Claims Three (A) and (G) if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.  As for Claims Three (B) - (F), Petitioner is foreclosed from presenting these five Claims in a successive Rule 61 motion, which means that they are deemed procedurally defaulted.  Consequently, the Court will only be able to review the merits of Claims Three (B) - (F) if Petitioner demonstrates cause for, and prejudice resulting from, the procedural default, or if the Court must review the Claims in order to prevent a miscarriage of justice.

### 1. Claims Three (A) and (G): reviewed under § 2254(d)

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with

---

[26]Petitioner's Reply only addresses Claims 3 (B) - (F) and argues that they are "singly and cumulatively" ***substantial***.  (D.I. 37 at 53) (emphasis added)  In the Court's view, the use of this terminology demonstrates Petitioner's implicit acknowledgement of procedural default because he is attempting to demonstrate cause for his default of these claims under *Martinez*.  (*See* D.I. 27 at 25 - 32)

reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).

A court can choose to address the prejudice prong before the deficient performance prong, and can reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698. If the state court only addresses one prong of the *Strickland* test without addressing the merits of the other prong, and the federal court decides to consider the unaddressed prong, the federal court's review of the unaddressed prong must be *de novo*. *See, e.g., Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim *de novo*."); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (applying *de novo* review where state courts did not reach prejudice prong under *Strickland*).

Turning to the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme

43

Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Since the Delaware Supreme Court correctly identified the *Strickland* standard in Petitioner's case, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing this second step of the § 2254(d)(1) inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens.[27] *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance,

---

[27]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

562 U.S. at 105 (internal citations omitted). The Supreme Court has indicated, but has not explicitly stated, that the doubly deferential standard applies to both prongs of a *Strickland* claim. *See, e.g., Cullen v. Pinholster*, 563 U.S. 170, 202 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). While at least two circuit courts have explicitly held that the "doubly deferential" standard applies to both *Strickland* prongs, "it is an open question in [the Third Circuit] whether [the doubly deferential] language applies to the prejudice prong [of *Strickland*]." *Lazar v. Sup't Fayette SCI*, 731 F. App'x 119, 122 n.4 (3d Cir. 2018). Since the Parties did not specifically brief this issue, and since the Court's decision regarding the ineffective assistance of counsel claims is warranted under the traditional AEDPA deference, the Court will not address whether "double deference" applies to both prongs of the *Strickland* standard.

and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### a. Claim Three (A)

In Claim Three (A), Petitioner contends that trial counsel provided ineffective assistance by failing to investigate and challenge the admission of State Exhibit 84 and Detective Conner's related testimony regarding Romeo's out-of-court statement. According to Petitioner, if trial counsel had discovered the discrepancy between the discovery copy of the photo array and State Exhibit 84, trial counsel would have had grounds to exclude the array and/or impeach Detective Conner's testimony.

The Delaware Supreme Court denied Claim Three (A) as meritless after analyzing Petitioner's argument under the prejudice prong of *Strickland*, without addressing whether trial counsel's performance was deficient. Since the Delaware Supreme Court did not consider whether trial counsel's failure to challenge State Exhibit 84 and Detective Conner's related testimony constituted deficient performance, Petitioner contends that the Court must determine if trial counsel's actions constitute deficient performance under a *de novo* standard of review, but apply § 2254(d) deference to the Delaware Supreme Court's determination of prejudice. If the Court found it necessary to consider the deficient performance prong of *Strickland* when considering Claim Three (A), then it would, as Petitioner correctly asserts, apply a *de novo* standard of review for the performance prong of *Strickland*. However, since Petitioner must prove both *Strickland* prongs in order to warrant relief, a court may dispose of an ineffectiveness claim if the petitioner makes an inadequate showing as to one prong. *See Strickland*, 466 U.S. at 697. As explained below, the Court

45

concludes that the Delaware Supreme Court reasonably applied *Strickland* when holding that

Petitioner was not prejudiced by trial counsel's performance. Therefore, the Court need not address

the performance prong of *Strickland.*

Here, Petitioner contends that the Delaware Supreme Court incorrectly applied an "outcome

determinative" test for determining prejudice rather than *Strickland*'s "reasonable probability"

standard. Petitioner purports to find support for this view in the Delaware Supreme Court's

affirmance of the following finding of the Superior Court:

> Regardless of when the word "shooter" was written on the original
> line-up, Ms. Romeo's identification of [Petitioner] as the shooter
> would have been introduced in her 350 statement at trial. As such, the
> outcome of the trial, even if Trial Counsel had noticed the discrepancy
> and raised the issue, would have been the same.

(D.I. 37 at 30-31) According to Petitioner, "the [S]tate court held [him] to a higher prejudice

standard than *Strickland* requires," thereby requiring the Court to review the prejudice prong *de novo.*

The Court is not persuaded. At the outset of its analysis, the Delaware Supreme Court

properly articulated the *Strickland* standard as follows:

> To prevail on this claim, [Petitioner] must be able to satisfy the two-
> prong test from *Strickland v. Washington*, showing both that his trial
> counsel's failure to object fell below an objective standard of
> reasonableness and that but for that deficient performance, there was
> a reasonable probability that the outcome of the proceedings would
> have been different; in other words, that there was prejudice to his
> case.

*Collins*, 2016 WL 2585782, at *3. The Delaware Supreme Court then considered the entire record

before deferring to the Superior Court's factual finding on remand "that Romeo identified

[Petitioner] as the shooter during her interview, but for some reason Detective Conner failed to

write it on the photo array at that time." *Id.* at *5-6. After deferring to the Superior Court's finding,

the Delaware Supreme Court proceeded to consider whether Petitioner demonstrated prejudice

from trial counsel's failure to recognize the discrepancy. The Delaware Supreme Court ultimately

concluded that Detective Conner's police report and affidavit of probable cause reflected sufficient

additional pretrial identifications by Romeo which, when added to Gibson's recorded identification,

precluded Petitioner from showing it was "reasonably likely the outcome would have been

different." *Id.* at \*5. Given the Delaware Supreme Court's reasoning, the Court concludes that the

Delaware Supreme Court did not apply a standard requiring a higher showing of prejudice than the

*Strickland* standard.

Next, Petitioner argues that the Superior Court unreasonably determined the facts in finding

that Petitioner was not prejudiced by trial counsel's performance, because the Superior Court

ignored "its own stated basis [when denying the original Rue 61 motion] for admitting the § 3507

statement and the fact that Detective Conner committed perjury," as well as "the impact it would

have had on the jury had trial counsel exposed Detective Conner to have committed perjury and

tampered with the photo line-up." (D.I. 37 at 33) The Court has already explained the reason for

its deference to, and acceptance of, the Delaware state courts' factual finding that Romeo's § 3507

statement would have been admitted even if the trial court had known about the discrepancy

between the discovery copy of the photo array and State Exhibit 84. (D.I. 18-11 at 33) In addition,

Petitioner's conclusory and general statement that the exposure of the alteration "would have armed

trial counsel with ample grounds to move for sanctions for misconduct, discovery violations, and for

mistrial," and would have "destroyed" Detective Conner's and the State's credibility (D.I. 37 at 34),

does not, without further explanation, demonstrate that impeaching Detective Conner on this basis

had a reasonable probability of changing the results of Petitioner's trial. In this case, the Delaware

Supreme Court found that "State Exhibit 84 [the altered photo array] was not the only time where

Detective Conner recorded that Romeo had identified [Petitioner] as the shooter," because

47

Detective Conner had also noted Romeo's identification of Petitioner as the shooter in his affidavit of probable cause and in his police report. *See Collins*, 2016 WL 2585782, at *5. The Delaware Supreme Court also noted that the "State introduced evidence that gunshot residue and [Petitioner's] DNA were found on the sweatshirt both witnesses saw him wearing." *Id.*

In addition, the other witness, Gibson, had also identified Petitioner from a photo array prior to trial and the recording of her identification was admitted into evidence. *Id.* As the Court explained with respect to Claim Two (A),[28] given Gibson's recorded identification of Petitioner as the shooter, Petitioner cannot demonstrate a reasonable likelihood that the jury would not have convicted him without Romeo's identification. Consequently, while the alteration of State Exhibit 84 and Detective Conner's related testimony about when he wrote the word "shooter" on State Exhibit 84 certainly could have been used to impeach the detective's credibility, Petitioner has not demonstrated a reasonable probability that exposing the alteration to State Exhibit 84 and/or Detective Conner's related testimony regarding when he wrote the word "shooter" on the exhibit would have affected the credibility of Romeo's identification of Petitioner or the credibility "of the prosecution itself." (D.I. 37 at 17)

After considering all the circumstances, the Court concludes that Petitioner cannot demonstrate a "substantial" likelihood[29] that the jury would have disbelieved Romeo's out-of-court

---

[28] *See supra* Section IV.B.2(a)(iii).

[29] In *Harrington v. Richter*, 562 U.S. at 112, the Supreme Court stated:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not

48

identification had it known about the discrepancy between the two photo arrays and Detective

Conner's testimony regarding the word "shooter" on State Exhibit 84.  Thus, the Delaware Supreme

Court reasonably applied *Strickland* in finding that Petitioner did not establish prejudice and the

Court will deny Claim Three (A).

### b.  Claim Three (G)

The following background information is helpful for understanding Petitioner's next

ineffective assistance of counsel claim.  One of the State's main witnesses, Gibson, lived in the

apartment building across the street from the shooting and was outside at the time.  (D.I. 18 at 36)

At trial, Gibson testified that she did not see the shooting and could not identify the shooter.  She

confirmed that she spoke with Detective Conner two days after the shooting in a recorded interview

and told him that she would not speak to him if it meant that she would have to testify.  (D.I. 18 at

36-37)  Gibson testified that she might not have been truthful with Detective Conner during the

interview and could not remember much about the events.  (D.I. 18 at 37)  The State played

Gibson's recorded statement at trial, where she could be heard identifying the person in photograph

number three.  *See Collins*, 2016 WL 2585782, at *3.  Since it was not possible to ascertain who

Gibson was identifying as the shooter without additional information, the trial court permitted

Detective Conner to testify that the person she identified was Petitioner.  *See id.*  Specifically,

Detective Conner testified that Gibson identified Petitioner's photograph in the array as "the

shooter, or the boy with the shooter."  (D.I. 18 at 37)  "In another part of the recording, Gibson

---

altered the outcome," but the difference between *Strickland*'s prejudice
standard and a more-probable-than-not standard is slight and matters
"only in the rarest case."  The likelihood of a different result must be
substantial, not just conceivable.

contradicted her earlier identification, stating that [Petitioner] had 'nothing to do with it.'" *Collins*, 2016 WL 2585782, at *3.

On direct appeal, Petitioner argued that the trial court's admission of Gibson's out-of-court statement into evidence was improper because (1) Gibson did not speak with the police voluntarily, since Detective Conner promised Gibson she would not be called upon to testify in court; and (2) Gibson's in-court testimony did not touch on the content of her out-of-court statement. *See Collins v. States*, 56 A.3d 1012, 1018-19 (Del. 2012). The Delaware Supreme Court rejected both arguments. After noting that "a purpose of § 3507 is to allow the admission into evidence of the out-of-court statements of turncoat witnesses," the Delaware Supreme Court held that Gibson's statements were properly admitted under § 3507 because "Gibson's testimony describe her position in relation to where the shooting occurred, her reaction to these, and her interaction with Det. Conner. It was for the jury to assess the credibility of Gibson and Det. Conner, who testified about Gibson's prior statements." *Id.* at 1019.

Petitioner re-asserted his challenge to the admission of Gibson's out-of-court statement and Detective Conner's related testimony in his Rule 61 proceeding, this time arguing that trial counsel had provided ineffective assistance by failing to object to and move to strike Detective Conner's testimony concerning Gibson's out-of-court identification for constituting either an improper narrative interpretation under § 3507 or for constituting improper embellishment of Gibson's identification. The Superior Court denied the argument, holding that Petitioner failed to satisfy either prong of *Strickland* because "Det. Conner's recitation of Gibson's out-of-court statement did not constitute an interpretive narrative, and [Petitioner] has offered no evidence to rebut the presumption that trial counsel's trial strategy was reasonable." *Collins*, 2015 WL 412924, at *4. The Delaware Supreme Court affirmed that decision, holding that Petitioner "cannot demonstrate that

50

Detective Conner's statement was an improper interpretive narrative, and therefore cannot show that there was a reasonable probability that an objection would have resulted in a different outcome." *Collins*, 2016 WL 2585782, at *4.

In Claim Three (G), Petitioner contends that, contrary to the Delaware Supreme Court's decision, he was prejudiced by trial counsel's failure to object to Detective Conner's testimony concerning Gibson's out-of-court identification on the grounds that it "amounted to an incorrect narrative of [Gibson's] statement." (D.I. 18 at 43) Petitioner's argument is unavailing. The Delaware Supreme Court concluded that Petitioner could not demonstrate prejudice only after conducting a thorough factual analysis as to why Detective Conner's testimony did not constitute a narrative interpretation or improper embellishment. For instance, the Delaware Supreme Court noted that Gibson's recorded statement identified the shooter as a number, rather than by a name, and Detective Conner's testimony was necessary to correlate the number to a particular photo in the array. The Delaware Supreme Court explained that the need for Detective Conner's explanation did not transform his testimony into an "interpretive narrative." Also, since Gibson had identified Petitioner's picture as the "shooter" or "the boy with the shooter," the Delaware Supreme Court reasonably found "it was neither narrative interpretation nor embellishment for Detective Conner to clarify who Gibson identified in the array." *Collins*, 2016 WL 2585782, at *4. In addition, since the jury heard the complete recording of Gibson's identification, including the exculpatory statement about Petitioner "having nothing to do with it," it was reasonable for the Delaware Supreme Court to conclude that Detective Conner's testimony served "merely to make understandable an identification that would otherwise be meaningless to anyone listening only to the audio recording, rather than to put emphasis on any particularly damning portions of Gibson's statement." *Id.*

Finally, Petitioner's conclusory and unsupported argument in this proceeding that Detective

Conner's testimony amounted to an impermissible narrative or embellishment under § 3507 does

not provide a reason to question the Delaware Supreme Court's resolution of a Delaware evidentiary

issue.  In short, after considering all of the aforementioned circumstances, the Court concludes that

Petitioner cannot demonstrate a substantial likelihood that the jury would not have convicted him

but for trial counsel's failure to object to Detective Conner's testimony about Gibson's statement.

Accordingly, the Court will deny Claim Three (G) for failing to satisfy § 2254(d).

### 2. Claims Three (B), (C), (D), (E), (F): procedurally defaulted

To reiterate, the Court cannot review the merits of Claims Three (B) - (F) unless Petitioner

demonstrates cause and prejudice, or that a miscarriage of justice will occur without a merits review.

Citing *Martinez v. Ryan*, Petitioner contends that post-conviction counsel's failure to raise the instant

five Claims constitutes cause for his default.  In order to establish "sufficient prejudice from

counsel's ineffective assistance that [a petitioner's] procedural default must be excused under

*Martinez*," a petitioner must show "that his underlying ineffective assistance-of-trial counsel-claim

has some merit and that his state post-conviction counsel's performance fell below an objective

standard of reasonableness."  *Workman v. Sup't Albion SCI*, 915 F.3d 928, 941 (3d Cir. 2019).

Whether a claim has some merit under *Martinez* is "analogous to the substantiality requirement for a

certificate of appealability."  *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).  To demonstrate that a

claim has some merit, a petitioner must "show that reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further."  *Workman*, 915 F.3d

at 938 (internal quotation marks omitted).  For the reasons set forth below, the Court concludes that

Petitioner has failed to demonstrate that his unexhausted claims of ineffective assistance of trial

counsel have "some merit" under the standard articulated in *Martinez* to excuse their procedural default. However, even if the Court presumed that the claims were sufficient to overcome Petitioner's procedural default, the Court would deny them as meritless under *Strickland*.

### a. Failure to call an identification expert

In Claim Three (B), Petitioner contends that trial counsel provided ineffective assistance by failing to engage the services of an expert identification witness to testify that eyewitness identifications are inherently unreliable and that stress and multiple perpetrators reduce the accuracy of eyewitness identifications. (D.I. 18 at 37-38) To support this contention, Petitioner has provided an expert report authored by Dr. Julie Buck. In the report, Dr. Buck found that the reliability of Gibson and Romeo's identifications were limited by the following factors: (1) the witnesses were likely distracted or not attending to the suspects at the pertinent time; (2) multiple suspects were present, a weapon was present, the amount of viewing time was very brief, and the witnesses were highly stressed; (3) Detective Conner did not provide an admonition that the perpetrator may or may not be present in the lineup (at least for Gibson's lineup); and (4) there is some evidence that the Petitioner's face was familiar to Gibson and Romeo because they may have seen Petitioner at another time. (D.I. 19-1 at 7) Dr. Buck also asserted that "Gibson was likely paying minimal attention," "Detective Conner may have influenced [Gibson's] decision to select [Petitioner]," "it is unclear whether source confusion or a bystander effect could have played a role in this case," and "[Petitioner's] photograph was familiar to Ms. Romeo and it may have been difficult to determine the source of that memory of [Petitioner]." (*Id.* at 4-5)

In contrast, however, evidence admitted during the trial established that Petitioner's DNA was found in the suspect vehicle and also on a unique "Roca Wear" sweatshirt that both witnesses identified and which could also be seen on a video admitted at trial on a person running from the

crime scene.  Significantly, although Romeo and Gibson identified Petitioner as the shooter in their

pretrial statements, they failed to identify Petitioner at trial.  Since the jury heard the inconsistent

testimony related to the identification of the shooter, Petitioner cannot demonstrate a reasonable

probability that expert testimony such as Dr. Buck's would have made a difference in the jury's

verdict.  Thus, Claim Three (B) is not substantial enough under *Martinez* to excuse Petitioner's

procedural default, and also fails to satisfy the prejudice prong of *Strickland*.

### b.  Failure to request a special eyewitness jury instruction

In Claim Three (C), Petitioner asserts that trial counsel was ineffective for failing to request a

special jury instruction on the unreliability of eyewitness identification.  The trial court provided the

following jury instruction:

> An issue in this case is the identification of the defendant.
> Identification is an element of the offense. . . .  Before you may find
> the defendant guilty of any crime, you must be satisfied beyond a
> reasonable doubt that the wrongful conduct charged in this case
> actually took place and the defendant was in fact the individual who
> committed that wrongful conduct. . . .  If there is any reasonable doubt
> about the identification of the defendant, you must give him the
> benefit of such doubt and find him not guilty.

(D.I. 27 at 28)

"An appraisal of the significance of an error in the instructions to the jury requires a

comparison of the instructions which were actually given with those that should have been given."

*Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977).  "An omission, or an incomplete instruction, is less

likely to be prejudicial than a misstatement of law."  *Id.* at 155.  In addition, the "question in such a

collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process, not merely whether the instruction is undesirable,

erroneous, or even universally condemned."  *Id.* at 154 (internal quotation marks omitted).

Petitioner criticizes the instruction that was given because "[e]yewitness identification is fallible" (D.I. 18 at 39), adding that because the "jury was not instructed about how to evaluate the witnesses' credibility," Petitioner suffered prejudice. (D.I. 37 at 56) Notably, however, Petitioner does not proffer what would have been an acceptable jury instruction or make a specific argument about how the given instruction was insufficient. Petitioner has not, therefore, demonstrated that the instant allegation of ineffective assistance of trial counsel has some merit; he also cannot satisfy either prong of *Strickland*. Thus, Claim Three (C) is not substantial enough under *Martinez* to excuse Petitioner's procedural default and also fails to satisfy the prejudice prong of *Strickland*.

### c. Failure to conduct an independent investigation

In Claim Three (D), Petitioner contends that trial counsel provided ineffective assistance by failing to interview witnesses, especially Shakira Romeo, prior to trial. According to Petitioner, trial counsel would have been "prepared to counter the State's attempt to introduce [Romeo's] unsworn statements as substantive evidence" if he had interviewed Romeo prior to trial. (D.I 18 at 39) He also asserts that "[Romeo] would have told counsel that she never identified [Petitioner] as the shooter in the photo array. She would have told counsel that she did not see the shooting. Trial counsel would have been more alert to the 'discrepancy' with Exhibit 84." (D.I. 18 at 39-40) The Court is not persuaded. On direct appeal, the Delaware Supreme Court upheld the admission of Romeo's out-of-court statement over trial counsel's objection. *See Collins*, 56 A.3d at 1019. As the Delaware Supreme Court explained, Romeo testified at trial that she was present while the shooting occurred and heard the gunshots. *Id.* She testified that she looked at the photo array and recognized several faces, she remembered she told the officer the truth, but she did not remember picking Petitioner out of the array. *Id.*

Petitioner's speculative assertions about what Romeo would have told trial counsel during an interview do not establish that Claim Three (D) has some merit. They also do not overcome the strong presumption of competency and high burden of actual prejudice to prove ineffective assistance under *Strickland*.

### d. Failure to move for mistrial

In Claim Three (E), Petitioner asserts that trial counsel should have moved for a mistrial when the State did not present Brineka Neal's testimony after advising the jury in opening statements that Neal would testify about Petitioner's use of her vehicle. Petitioner supports this argument by contending there was no evidence linking Petitioner to the car. The record belies Petitioner's assertion. As the Delaware Supreme Court explained on post-conviction appeal, the "State introduced evidence that the gunshot residue and [Petitioner's] DNA were found on the sweatshirt both witnesses saw him wearing," and the police found this brown sweatshirt with "Roca Wear" lettering in the suspect vehicle. *Collins*, 2016 WL 2585782, at *4 (citing *Collins*, 56 A.3d at 1016). Moreover, during closing statements, trial counsel told the jury that "[w]e never heard from Bernika [sic] Neal, so as far as that testimony is concerned, the Judge will tell you, or proposed testimony, you have to disregard it." (D.I. 27 at 29) Trial counsel used Neal's absence from the trial to argue that "[w]e have no idea how many people had access to that car[,] . . . who she loaned it to, who went with her when she drove it." (*See id.*)

Given these circumstances, the Court concludes that Petitioner has failed to establish that Claim Three (E) has some merit. He has also failed to overcome the strong presumption of competency and high burden of actual prejudice to prove ineffective assistance under *Strickland*.

**e. Failure to the preserve the record for appeal**

In Claim Three (F), Petitioner contends that trial counsel was ineffective for failing to preserve the trial record for appeal. According to Petitioner, since the prosecution-generated transcript of Romeo's statement and Gibson's audio-taped statement were not entered into evidence at trial, "the incomplete record on appeal prevented appellate counsel from raising and supporting appropriate challenges to the trial court's admission of their statements at trial." (D.I. 18 at 41-42)

Petitioner's contention is incorrect and also fails to demonstrate prejudice. On direct appeal, Petitioner argued that Gibson's out-of-court statement was wrongfully admitted into evidence because "(1) Gibson did not speak to Detectives voluntarily because Det. Conner promised Gibson she would not be called upon to testify in court, and (2) Gibson's in-court testimony did not touch on the content of her out-of-court statement." *Collins*, 56 A.3d at 1018-19. In turn, the Delaware Supreme Court held that Gibson's statements were properly admitted into evidence under 11 Del. Code § 3507, stating that "a purpose of § 3507 [was] to allow the admission into evidence of the out-of-court statements of turncoat witnesses. Gibson's testimony described her position in relation to where the shooting occurred, her reaction to the shooting, and her interaction with Det. Conner." *Id.* at 1019. Hence, "[i]t was for the jury to assess the credibility of Gibson and of Det. Conner, who testified about Gibson's prior statements." *Id.*

Petitioner also challenged the admission of Gibson's statement on post-conviction appeal from his first Rule 61 motion, arguing that trial counsel was ineffective by failing to object to the admission of the statement as amounting to "improper embellishment." *Collins*, 2016 WL 2585782, at *3. Petitioner argued that "because Gibson's statement was recorded, only the recording should have been admitted – not Detective Conner's testimony on the substance of the recording. [Petitioner] finds this particularly pressing because Detective Conner's testimony 'contradicted' the

recording, and emphasized inculpatory portions (the identification) while ignoring the exculpatory statement about [Petitioner] having 'nothing to do with it.'" *Id.* at *4. As previously discussed, the Delaware Supreme Court found "[t]he fact that Gibson's statement needed some explanation because it was an audio recording of an exchange in which a witness identified a person in a numbered photograph *by number* does not transform Detective Conner's testimony into an 'interpretive narrative.'" *Id.* (emphasis in original). The Delaware Supreme Court specifically acknowledged that "Gibson had identified Collins' picture as the 'shooter' or 'the boy with the shooter.'" *Id.* Moreover, since "the jury heard the complete recording, including the exculpatory statement about [Petitioner] having 'nothing to do with it[,]' Detective Conner's testimony served merely to make understandable an identification that would otherwise be meaningless to anyone listening only to the audio recording, rather than to put emphasis on any particularly damning portions of Gibson's statement." *Id.* In short, the Delaware Supreme Court determined that Petitioner could not establish his claim of ineffective assistance of trial counsel because he could not show that there was a "reasonable probability that an objection would have resulted in a different outcome." *Id.*

This record contradicts Petitioner's contention that the "Delaware Supreme Court was left with the false impression that Ms. Gibson's statement amounted to a clear identification and that Detective Conner's testimony did not misconstrue it." (D.I. 18 at 42) Since Petitioner raised and argued claims regarding the out-of-court statement, he cannot demonstrate either deficient performance or resulting prejudice. Consequently, Petitioner has failed to overcome his procedural default of Claim Three (F).

### E.  Claim Four: Ineffective Assistance of Appellate Counsel

In Claim Four, Petitioner contends that appellate counsel provided ineffective assistance by failing to argue that Detective Conner's narrative interpretation of Romeo's statements was inadmissible.  Petitioner presented this claim in his post-conviction appeal of his first Rule 61 motion, and the Delaware Supreme Court denied it as meritless.  Therefore, Petitioner will only be entitled to relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel.  *See United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) ("To assess the performance of appellate counsel, we apply the two-prong test set forth in *Strickland* . . ."); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal are strategic.  *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without specter of being labeled ineffective).  An attorney is not required to raise every possible non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).  As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented."  *Smith*, 528 U.S. at 285.  In order to establish prejudice, a petitioner must show a reasonable likelihood that the court would have resolved the case differently on appeal, if not for counsel's deficiencies.  *See United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

The Delaware state courts correctly identified the *Strickland* standard applicable to all of Petitioner's claims of ineffective assistance of counsel.  Consequently, the Delaware courts' denial of Claim Four was not contrary to clearly established federal law.

59

Nor did the Delaware courts unreasonably apply *Strickland* in denying the instant ineffective assistance of appellate counsel claim. On direct appeal, Petitioner's argument rested "on the claim that because Romeo denied making the identification of Collins, her testimony did not 'touch on' her prior statement." *Collins*, 56 A.3d at 1019. The Delaware Supreme Court found this argument meritless, stating, "[a] turncoat witness denying a prior statement is a classic example of § 3507 applicability." *Id.* The Delaware Supreme Court held that the Superior Court did not err in admitting Romeo's out-of-court statement via Detective Conner's testimony, explaining that "[w]hile on the witness stand, Romeo described particularities of the shooting, her interactions with the police officers, and the photo array she was shown. Romeo's testimony, although inconsistent with her prior statements, sufficiently did 'touch on' the content of her prior statements." *Id.*

Given the Delaware Supreme Court's holding that the trial court properly admitted Detective Conner's § 3507 statement, the Delaware courts reasonably applied *Strickland* in holding that appellate counsel did not provide ineffective assistance by failing to assert a meritless claim. Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

### F. Claim Five: Invalid *Allen* Charge Jury Instruction[30]

As the Delaware Superior Court described:

> After eleven hours of deliberation, the jury reported to the trial judge that they were deadlocked. The trial judge gave an *Allen* charge and instructed the jury to deliberate further. Two hours later, the jury returned the guilty verdicts.

---

[30]As previously mentioned, Petitioner expressly abandons the argument presented in the original Petition as subsection (B) in Claim Five, namely that the trial court erred for failing to provide a special eyewitness identification instruction. (D.I. 37 at 58) Therefore, the Court only addresses Petitioner's argument concerning the trial court's *Allen* charge to the jury, which was presented in the original Petition as Claim Five (A). As such, the Court refers to the original "Claim Five (A)" as "Claim Five."

*Collin*s, 56 A.3d at 1015.  An *Allen* charge is a Supreme Court-approved supplemental jury

instruction for deadlocked juries.  *See Allen v. United States*, 164 U.S. 492, 501 (1896).

In Claim Five, Petitioner contends that the *Allen* charge the trial court provided the jury was

"unconstitutionally coercive and violated [Petitioner's] federal constitutional rights.  The Supreme

Court of Delaware's ruling [on direct appeal] that the trial judge did not commit reversible error in

providing the *Allen* charge was contrary to and an unreasonable application of clearly established

federal law, and involved an unreasonable application of facts."  (D.I. 18 at 47)

Although Petitioner raised the same general argument regarding the coercive nature of the

*Allen* charge on direct appeal, Petitioner's appellate argument was more specific and raised four areas

of concern: (1) "the wording of the instruction concerning jurors in 'the majority' or 'the minority'

was coercive to the minority jurors;" (2) "the *Allen* charge was coercive because the trial judge did

not instruct the jurors 'not to render any verdict contrary to the dictates of personal conscience,' as

this Court required in *Brown v. State*," 369 A.2d 682, 684 (Del. 1976); (3) "the trial judge's statement

that the jury 'is at liberty to disregard the comments of both the Court and counsel' was improper;"

and (4) "the trial court erred in highlighting how many Court resources were devoted to presenting

this trial, and that the case 'must be disposed of sometime.'"  *Collins*, 56 A.3d at 1021-22.

Unfortunately, in this proceeding, Petitioner does not indicate whether the instant coercive *Allen*

charge claim is premised on the same four specific arguments he presented on direct appeal.

However, as does the State, the Court will exercise prudence and treat Claim Five as though it

presents the same sub-arguments Petitioner raised on direct appeal.

On direct appeal, the Delaware Supreme Court cited Delaware Supreme Court Rule 8 and

explained that it would review "for plain error any portion of the charge to which no specific

objection was made" during the trial.  *Id.* at 1020.  Since Petitioner did not raise the first three

61

objections about the *Allen* charge during trial, the Delaware Supreme Court reviewed those three

complaints under Delaware Supreme Court Rule 8 and held that none of them constituted plain

error. As for the fourth complaint, the Delaware Supreme Court held that the trial court did not

abuse its discretion by highlighting how many Court resources were used in presenting the trial and

stating that the case "must be disposed of sometime." *Id.* at 1021.

Delaware Supreme Court Rule 8 is an independent and adequate state ground that precludes

federal habeas review absent a showing of cause and prejudice, or a miscarriage of justice. *See*

*Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir. 2008). In its Answer, the State mentions the Delaware

Supreme Court's application of the plain error standard of review pursuant to Rule 8 and

Petitioner's resulting procedural default, asserting that the "Court cannot consider the claim unless

[Petitioner] can establish cause for his procedural default and resulting prejudice, or that failure to

consider the claim would result in a fundamental miscarriage of justice." (D.I. 27 at 35) Then,

however, the State then proceeds to assert that the Delaware Supreme Court "decided this claim on

the merits" and, therefore, "habeas relief will only be warranted if the [Delaware Supreme] Court's

decision was either contrary to, or an unreasonable application of *Jenkins [v., State*, 401 A.2d 83, 87

(Del. 1979)] and *Allen v. United States*, [164 U.S. 492 (1896)], which represents the clearly established

federal law governing claims of coercion in supplemental jury charges." (D.I. 27 at 35) Given that

statement, and the State's ensuing analysis of Claim Five, it appears as though the State has waived

Petitioner's procedural default of Claim Five. Thus, the Court will review Claim Five under

§ 2254(d)(1).

As noted by the State, *Allen v. United States* constitutes the clearly established federal law

applicable to Claim Five. In *Allen*, the Supreme Court approved the use of a supplemental jury

instruction to a deadlocked jury to continue deliberations, observing that such charges were in

accordance with "the very object of the jury system . . . to secure unanimity by a comparison of views." 164 U.S. at 501-02.  Normally, a supplemental instruction which encourages the jury to reach a unanimous verdict is entirely appropriate.  *See, e.g., Lowenfield v. Phelps,* 484 U.S. 231, 237-39 & n.1 (1988).  "For this reason, an *Allen* charge delivered to a jury during state criminal proceedings generally fails to warrant federal habeas relief unless the supplemental charge was so unfair or coercive that it rendered the entire trial fundamentally unfair." *Desmond v. Snyder*, 1999 WL 33220036, at *5 (D. Del. Nov. 16, 1999).  When determining if an *Allen* charge was coercive, a court must consider the charge "in its context and under all the circumstances." *Lowenfield*, 484 U.S. at 237; *see also United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969) (considering whether *Allen* charge in "the context in which it was presented" was "so prejudicial as to deprive appellant of a fair trial and a unanimous verdict based on proof beyond a reasonable doubt").  An *Allen* charge will be found to be unduly coercive "where the charge caused the jury to be influenced by concerns irrelevant to their task and [where the jury] reached its subsequent verdict for reasons other than the evidence presented to it." *United States v. Jackson*, 443 F.3d 293, 297 (3d Cir. 2006) (internal quotation marks omitted).

On direct appeal, Petitioner argued that the *Allen* charge in his case was coercive because it was "remarkably similar to another charge" that the Third Circuit held to be unnecessarily coercive in *United States v. Eastern Medical Billing*, 230 F.3d 600 (3d Cir. 2000).  (D.I. 18-4 at 19)  As discussed in more depth below, Petitioner then premised all four of his appellate *Allen* charge sub-arguments on the reasoning in *Eastern Medical Billing*.[31]  (D.I. 18-4; *see also Collins*, 56 A.3d at 1021)  While it appears that "the *Allen* charge given here was the pattern instruction regularly used by the Superior

---

[31]Petitioner's 60-page Reply did not address the State's argument concerning Claim Five.

Court,"[32] "modified only in ways requested by [Petitioner at trial],"[33] neither Party has provided a copy of the slightly "modified" pattern *Allen* charge for the Court's review.[34]

### 1. Trial court's use of majority/minority language

The trial court's *Allen* charge "asked both the majority and minority jurors to re-examine their views" and "used different phrasing in addressing the majority jurors than . . . used in addressing the minority jurors." *Collins*, 56 A.3d at 1021. On direct appeal, Petitioner contended that the wording of the instruction concerning jurors in "the majority" or "the minority" was coercive because it was "remarkably similar" to the *Allen* instruction the Third Circuit "found unnecessarily coercive" in *Eastern Medical Billing, Inc. See Collins*, 56 A.3d at 1021. Petitioner argued that, "as in *Eastern Medical Billing*, the majority jurors, unlike the minority jurors, were not instructed to re-examine their views." (D.I. 18-4 at 20) However, the Delaware Supreme Court noted that the Third Circuit's disapproval of the majority/minority distinction in *Eastern Medical Billing* was based on its supervisory power over the federal district courts and not on constitutional grounds. *See Collins*, 56 A.3d at 1021. The Delaware Supreme Court also noted that the federal circuits are split as to whether the majority/minority distinction is coercive, explaining:

> An *Allen* charge that instructs the majority and the minority to re-examine their views has been approved in the First, Fourth, Sixth, and Eighth Circuits. The *Allen* charges approved by these circuits differed in their wording, but each drew a distinction between majority and minority jurors and in some fashion asked both groups to reconsider their views. Importantly, each of those circuits found repeated warnings – as was done here – that jurors not give up their individual

---

[32] (D.I. 31-2 at 25)

[33] (D.I. 31-2 at 22)

[34] The Delaware courts website contains a copy of the Superior Court of Delaware Criminal Pattern Jury Instructions. *See* https://courts.delaware.gov/superior/pattern/pattern_criminal.aspx. The pattern *Allen* instruction is § 4.40 "Jury Unable to Agree – 'Allen' Charge'".

convictions, diminished the risk that the majority/minority distinction might be coercive. The Seventh and the District of Columbia Circuits agree with the Third Circuit that any majority/minority distinction is coercive.

Although these approaches suggest that any instruction using the majority/minority distinction is best avoided, the divergent federal precedent persuades us that it was not plain error for the trial judge to make the distinction in his *Allen* charge in this case. The error in wording – if there was one – was neither plain nor obvious.

*Id.*

When reviewing a habeas claim under § 2254(d)(1), the "clearly established law" by which a claim is measured is Supreme Court caselaw. The fact that there is a circuit split on the issue of the coercive effect of an *Allen* charge's minority/majority distinction demonstrates that there is no Supreme Court precedent prohibiting such a distinction. In fact, in *Lowenfield v. Phelps*, the Supreme Court noted that the jury instruction at issue in *Allen* was constitutional despite containing a minority/majority distinction:

The use of a supplemental charge has long been sanctioned. Nearly a century ago in *Allen v. United States*, this Court reviewed a charge similar but by no means identical to that given to the Louisiana jury here, and concluded that it was not reversible error even within the federal system. The defendant in that case had been sentenced to death by Judge Parker in the Western District of Arkansas, exercising a jurisdiction unique among federal courts. The judge's charge is not set out verbatim in the opinion of this Court, but it differed from the charge given in the present case in that the *Allen* charge urged the minority to consider the views of the majority, and ask themselves whether their own views were reasonable under the circumstances. This Court upheld the conviction and sentence against the defendant's claim of coercion, saying:

The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different

65

> view of the case from what he does himself. It cannot
> be that each juror should go to the jury room with a
> blind determination that the verdict shall represent his
> opinion of the case at that moment; or, that he should
> close his ears to the arguments of men who are equally
> honest and intelligent as himself.

> The continuing validity of this Court's observations in *Allen* are
> beyond dispute, and they apply with even greater force in a case such
> as this, where the charge given, in contrast to the so-called
> "traditional *Allen* charge," does not speak specifically to
> the minority jurors.

484 U.S. 231, 237-38 (1988).

Additionally, and of particular significance in this case, when distinguishing the Supreme

Court precedent on which the petitioner in *Lowenfield* had relied to demonstrate the coercive effect

of the *Allen* charge (*Jenkins v. United States*, 380 U.S. 445 (1965)), the *Lowenfield* Court explained that

*Jenkins* was of no help because *Jenkins* "was based on our supervisory power over the federal courts

. . . and not on constitutional grounds." *Lowenfield*, 484 U.S. at 551 n.2. This distinction between

supervisory powers and constitutional grounds is the same distinction the Delaware Supreme Court

relied on in Petitioner's appeal to distinguish the *Allen* charge that was disapproved of in *Eastern

Medical Billing*. *See Collins*, 56 A.3d at 1021. For these reasons, the Court concludes that the

Delaware Supreme Court did not unreasonably apply clearly established federal law in rejecting

Petitioner's argument about the Allen charge's reference to the majority/minority distinction.

## 2. Absence of curative language regarding personal conscience

Petitioner also argued on direct appeal that the *Allen* charge was coercive because the trial

judge did not instruct the jurors "not to render any verdict contrary to the dictates of personal

conscience." *Collins*, 56 A.3d at 1021. The Delaware Supreme Court rejected this argument and

held that sufficient admonition was given to the jurors to maintain their personal convictions, given

that the "trial judge expressly admonished the jurors that they should not do 'violence to the [their]

individual judgment and conscience'" and they "should not surrender [their] conscientious convictions," in various forms, four times during the *Allen* charge.  *Id.* at 1022.

In *United States v. Brennan*, the Third Circuit explained that "a charge would not be coercive if it contained language urging the jurors to re-examine their own view but not to 'surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of [their] fellow jurors, or for the mere purpose of returning a verdict.'"  326 F.3d 176, 192-93 (3d Cir. 2003); *see also United States v. Alper,* 449 F.2d 1223, 1234 (3d Cir. 1971) (holding that supplemental jury charge suggesting jurors re-examine their views was not unduly coercive because it also told jurors not to surrender their honest convictions).  Given the trial court's repeated reminders and cautions emphasizing to the jury that they must adhere to their individual convictions, the Court concludes that the Delaware Supreme Court reasonably applied *Allen* and its progeny when rejecting the instant argument.

### 3. Statement regarding liberty to disregard comments of trial court and counsel

On direct appeal, Petitioner argued it was improper for the trial court to advise the jury it "is at liberty to disregard the comments of both the [trial c]ourt and counsel."  *Collins*, 56 A.3d at 1022.  The Delaware Supreme Court rejected this argument based on well-settled Delaware precedent established in *Smith v. State*, 839 A.2d 666 (Table), 2003 WL 22931398, at *2-3 (Del. Dec. 9, 2003), and *Maxion v. State*, 612 A.2d 158 (Table), 1992 WL 183093, at *1 (Del. 1992).  *See Collins*, 56 A.3d at 1022.  In *Smith,* the Delaware Supreme Court found that the trial judge was merely reminding the jury that it was "part of its duty to assess the credibility of all witnesses" and, in doing so, it could "disregard comments of counsel (or even the [trial c]ourt) that, in the process of weighing the evidence, it found were not credible."  2003 WL 22931398, at *3.  In *Maxion*, the Delaware Supreme

Court noted that, when viewed in context, the language to "disregard" created no threat of coercion, when "coupled with repeated reminders to the jury to not surrender their convictions unless they believed them to be erroneous." *Collins*, 56 A.3d at 1022.  Notably, the reason the Third Circuit generally advised against stating the jury could disregard comments of both the trial court and counsel was to "avoid comments that are not clear and that could be interpreted to alter the instructions previously given to the jury." *Eastern Medical Billing*, 230 F.3d at 614.  In this proceeding, Petitioner has not provided any reason for the Court to question the Delaware Supreme Court's determination on this issue, especially when the trial court "reminded [the jurors] several times not to violate their individual judgment and conscience." (D.I. 31-2 at 25)

### 4. Statement regarding resources devoted to trial

Finally, Petitioner argued on direct appeal that the trial court erred in highlighting how many court resources were devoted to presenting his trial, and that the case "must be disposed of sometime." *Collins*, 56 A3d at 1022.  The Delaware Supreme Court rejected this argument, citing *Papantinas v. State* for the proposition that a court's statement that the case "must be disposed of sometime" is permissible so long as it is accompanied by repeated reminders that individual jurors should not "surrender his or her individual judgment or honest convictions." 820 A.2d 372 (Table), 2003 WL 1857548, at *1-2 (Del. Apr. 8, 2003).  Given the curative language contained in the *Allen* charge in Petitioner's case, the Court concludes that the Delaware Supreme Court did not unreasonably apply clearly established federal law in denying the instant argument.

Based on the foregoing, when viewed as a whole, the trial court's *Allen* charge was not coercive or prejudicial to Petitioner, and did not violate his due process rights.  Therefore, the Court will deny Claim Five in its entirety.

### G.   Claim Six: Cumulative Error

In his final Claim, Petitioner asserts that, "even if the Court finds that [he] is not entitled to relief based on any single claim, he is entitled to relief because of the cumulative effect of these errors. Collectively, the errors raised in this petition resulted in a fundamentally unjust conviction and sentence." (D.I. 18 at 48)  The record reveals that Petitioner did not present a cumulative error claim to the Delaware state courts.  As a result, the State contends that the Court cannot review this procedurally defaulted claim.  (D.I. 27 at 40)  While Petitioner implicitly concedes that Claim Six is procedurally defaulted, he asserts that: (1) exhaustion is not required; and (2) if exhaustion is required, he can overcome any procedural default based on post-conviction counsel's ineffectiveness.  (D.I. 37 at 58-59)

The United States Supreme Court has not recognized the concept of cumulative error on habeas review.  *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019).  Since there is no clearly established federal law with respect to a cumulative error argument, arguably the Court's analysis is over, and Petitioner is not entitled to habeas relief for Claim Six.

The Third Circuit, however, has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014).  Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process.  Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

69

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008).  Given the Third Circuit's recognition of the cumulative error doctrine in habeas proceedings, the Court will review Claim Six.

Here, the Delaware Supreme Court reviewed and rejected each alleged underlying error on its merits or as procedurally barred.  As previously discussed, this Court has also concluded that the Claims either lack merit and did not cause any prejudice, or are procedurally barred.  Since Petitioner has not provided anything to demonstrate "actual prejudice" even when the Five Claims are considered together, the Court will deny Claim Six as meritless.

## V.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.   CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied.  An appropriate Order will be entered.