IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SOLOMON COLLINS, :
:
        Petitioner, :
:
v. : Civil Action No. 16-751-GBW
:
ROBERT MAY, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
:
        Respondents. :

---

Janet Bateman, First Assistant, Office of the Federal Public Defender for the District of Delaware. Attorney for Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**[1]

March 28, 2023
Wilmington, Delaware

---

[1] This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Pending before the Court is Petitioner Solomon Collins' (Petitioner) Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (D.I. 42), pertaining to the denial of his § 2254 Petition on February 7, 2022 (*See* D.I. 40; D.I. 41). The Rule 59 (e) asks the Court to reconsider the dismissal of Claims One (A), Two (A), and Three (A), as well as the decision to not issue a certificate of appealability. (*Id.*) For the reasons that follow, the Court will grant Petitioner's Rule 59(e) Motion with respect to the prior denial of Claim One (A) for failing to assert a prima facie due process violation, but deny Petitioner's Rule 59 (e) with respect to his other requests. Notably, Petitioner's Petition (D.I. 18) will again be denied.

## I. BACKGROUND

> On October 8, 2009, Tommear Tinnin was shot to death while sitting in the back seat of a parked car with his two cousins and another young relative. The assailant fled the scene and passed two bystanders, Violet Gibson and Shakira Romeo. Gibson and Romeo met with Detective Conner after the incident. They both identified [Petitioner] as the shooter from a photo array. Detective Conner made an audio recording of his interview with Gibson. He did not record his interview with Romeo. Instead, he took notes on his notepad and directly on the photo array he presented to Romeo during the interview.
>
> At trial, the testimony of Gibson and Romeo was inconsistent with their prior statements to Detective Conner. The State used 11 Del. C. § 3507 to introduce their out-of-court statements through Detective Conner during

his testimony. The State also played the audio recording of Gibson identifying [Petitioner] as the shooter, and introduced into evidence the photo array Detective Conner had written on reflecting Romeo's identification. During his testimony, Detective Conner clarified that Gibson had identified [Petitioner] as the shooter because the recording identified the suspects by number rather than name. Further, he testified that Romeo identified [Petitioner] as the shooter and that he wrote notes regarding her statements onto the photo array during the interview.

After an eight day trial, a jury found [Petitioner] guilty of Murder First Degree, three counts of Reckless Endangering First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. On July 15, 2011, the Superior Court sentenced [Petitioner] to life imprisonment for the murder conviction, and additional time for the remaining counts.

[The Delaware Supreme Court] affirmed [Petitioner's] conviction on direct appeal in 2012. In 2013, [Petitioner] filed a motion for postconviction relief ["Rule 61 motion"] alleging ineffective assistance of counsel. The Superior Court denied the motion and held that counsel was not ineffective for failing to object, because admission of the § 3507 statements of both Romeo and Gibson had been proper. [Petitioner] appealed the Superior Court's rulings on the admission of each witness' § 3507 statement. During the appeal, the State learned that there was a discrepancy between the photo array that Romeo had used to identify [Petitioner], which the State admitted at trial ("State's Exhibit 84"), and the copy that the State had sent to [Petitioner's] attorney during discovery. The word "shooter" was written on State's Exhibit 84, but [Petitioner's] copy did not have the word "shooter" on it. At the parties' joint request, [the Delaware Supreme Court] remanded the case to the Superior Court for a hearing to explore the nature of the discrepancy between the photos

2

and retained jurisdiction. [The Delaware Supreme Court] declined to address [Petitioner's] second argument at that time, which pertains to Gibson's § 3507 statement, at the time we issued the remand order.

On remand, the Superior Court held a hearing to address the discrepancy. The State offered the testimony of Detective Conner, the trial prosecutors, and the trial defense attorney. The Superior Court found that (1) Detective Conner added the word "shooter" to the original photo array shown to Romeo after the discovery copy was made for [Petitioner]; (2) the alteration made to the original photo was not done in bad faith or in response to the § 3507 issue that arose at trial; (3) Romeo identified [Petitioner] as the shooter during her interview with Detective Conner; and (4) exclusive of the photo array, the trial prosecutors and defense counsel were aware during the pendency of the case that Romeo had identified [Petitioner] as the shooter and expected her to testify consistent with that identification at trial.

Based on these findings, the Superior Court held that [Petitioner's] ineffective assistance of counsel claim failed. The court found that the issue of when Detective Conner wrote the word "shooter" on the photo array was immaterial because Romeo's statement still would have been introduced as a § 3507 statement at trial. Therefore, even if trial counsel had noticed the discrepancy and raised the issue, the outcome would have been the same. Further, the Superior Court held that [Petitioner] could not show he was prejudiced by the discrepancy because Romeo's identification of [Petitioner] as the shooter was never withheld from trial counsel. Therefore, trial counsel was aware of Romeo's pretrial identification of [Petitioner] as the shooter and could have expected testimony consistent with that identification at trial.

3

*Collins v. State*, 138 A.3d 475 (Table), 2016 WL 2585782, at *2-3 (Del. May 2, 2016). On appeal after remand, the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's Rule 61 motion. *Collins*, 2016 WL 2585782, at *4-5.

Petitioner filed a habeas Petition in this Court, asserting the following six Claims: (1)(A) the Delaware Supreme Court erred when, in its Rule 61 appellate decision after remand, it held that the "newly discovered evidence" of the State Exhibit 84 and Detective Conner's related false testimony regarding the alteration was not prejudicial and did not amount to a denial of Petitioner's due process right to a fair trial; and (B) the trial court erred by failing to exclude Detective Conner's testimony regarding Ms. Romeo's statements as an inadmissible interpretive narrative under 11 Del. C. § 3507; (2) the State engaged in prosecutorial misconduct during Petitioner's trial by: (a) admitting into evidence State Exhibit 84 and Detective Collins' related false testimony; (b) arguing facts during the opening statement that were not produced during the trial; and (c) providing improper vouching during the closing argument; (3) ineffective assistance of trial counsel; (4) ineffective assistance of appellate counsel; (5) the trial court erred by giving an erroneous *Allen* jury instruction; and (6) the cumulative effect of all of these errors requires relief. (D.I. 18) The Honorable Leonard P. Stark denied the Petition in its entirety and, relevant to the instant Rule 59 (e) Motion, denied

Claims One (A) and Two (A) as meritless and Claim Three (A) for failing to satisfy § 2254(d). (D.I. 40; D.I. 41) Judge Stark also declined to issue a certificate of appealability for any Claims.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(e) is "a device [] used to allege legal error,"[2] and may only be used to correct manifest errors of law or fact or to present newly discovered evidence. *See Howard Hess Dental Labs, Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The scope of a Rule 59(e) motion is extremely limited. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. Dec. 22, 2011); *see also Brambles USA Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). The moving party must show one of the following in order to prevail on a Rule 59(e) motion: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Although the Third Circuit has "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration," at a minimum, a manifest error or injustice is a "direct, obvious,

---

[2]*United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003).

5

or observable error [...] that is of at least some importance to the larger proceedings." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir 2018). More specifically, when determining whether a decision resulted in a manifest injustice, a court must focus "on the gravity and overtness of the error." *Id.* at 312. Finally, a "motion for reconsideration is not to be used as a means to reargue a case or to ask a court to rethink a decision it has made." *United States v. Kennedy*, 2008 WL 4415654, at *1 (W.D. Pa. Sept. 26, 2008).

## III. DISCUSSION

In his timely filed Rule 59(e) Motion, Petitioner asserts that the Court committed the following factual or legal errors when denying his Petition that should result in the amendment of the judgment: (1) the Court erred in denying Claim One (A) for failing to state *a prima facie* claim that the Delaware state courts erred in finding that the admission of State Exhibit 84 and Detective Conner's false testimony did not violate Petitioner's due process rights (Claim One (A)) (D.I. 42 at 2-6); (2) the Court erred in ruling that the State did not engage in prosecutorial misconduct and violate his due process rights by presenting Detective Conner's perjured testimony and State Exhibit 84 as evidence during his trial (Claim Two (A)) (D.I. 42 at 6-13); and (3) the Court erred in ruling that trial counsel did not provide ineffective assistance by failing to notice and challenge the alteration on State Exhibit 84 (Claim Three (A)) (D.I. 42 at 13-16). Petitioner also

6

contends that Judge Stark erred by declining to issue a certificate of appealability for the Claims involved in the aforementioned arguments – Claims One (A), Two (A), and Three (A) – and also for Claim Five. (D.I. 42 at 16-18)

### A. Court's Denial of Claim One (A) Due to Petitioner's Failure to Establish a *Prima Facie* Due Process Violation

As explained in the Opinion denying the Petition,

> Claims One (A) and Two (A) present due process claims based upon Detective Conner's false testimony and alteration of State Exhibit 84. Claim One (A) asserts that the Delaware state courts committed error during and after the Rule 61 remand by failing to find that the admission of Detective Conner's false testimony and State Exhibit 84 violated his due process rights. The prosecutorial misconduct argument in Claim Two (A) asserts that the State violated Petitioner's due process rights because it knew or should have known that Detective Conner falsely testified about when he wrote the word "shooter" on State Exhibit 84.

(D.I. 40 at 13) In order to establish a due process violation stemming from a trial court's evidentiary error – such as the error alleged in Claim One (A) – a petitioner must show that the alleged evidentiary error was "of such magnitude as to undermine the fundamental fairness of the entire trial." *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001). In order to establish a due process violation stemming from the State's presentation of perjured testimony (prosecutorial misconduct/perjured testimony) – such as the error alleged in Claim Two (A) – a petitioner must demonstrate: (1) the existence of perjured testimony; (2) the State

7

knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *See Haskell v. Sup't Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017).

Petitioner contends that Judge Stark erred by dismissing Claim One (A) for failing to assert a *prima facie* due process violation because he set forth the elements of a prosecutorial misconduct/false testimony claim – including the knowledge element – in his Reply. (D.I. 42) The Court concurs that the dismissal of Claim One (A) was due to a misapprehension of the background facts of the Claim, but not the misapprehension presented by Petitioner. Specifically, the Court erred in dismissing Claim One (A) under the standard for prosecutorial misconduct/perjured testimony claims instead of the standard for due process violations stemming from a trial court's evidentiary error. Since Claim One (A) is not a prosecutorial misconduct/perjured testimony claim and should therefore not have been dismissed for failing to assert a *prima facie* due process violation, the Court will grant Petitioner's request for reconsideration and review Claim One (A) under the proper standard.

In Claim One (A), Petitioner argued that

> [t]he Superior Court erred when it ruled that [Petitioner] was not prejudiced by Detective Conner's false testimony that he wrote the word "shooter" on the photo array contemporaneous with his interview with the alleged identification witness [Romeo]. Had the jury learned of

8

> this falsification, it would have discredited his remaining testimony given that the jury was deadlocked after three days of deliberation and convicted [Petitioner] after being given the *Allen* charge.

(D.I. 18 at 12) Petitioner also argued that he was prejudiced because, other than Detective Conner's testimony, there was "scant" evidence or identification of Petitioner as a culprit. (D.I. 18 at 25)

Judge Stark considered, and rejected, these arguments when denying Claim Two (A)³ after examining the relative probative and prejudicial value of the evidence presented during Petitioner's trial. *See e.g. Lesko v. Owens*, 881 F.2d 44, 51 (3d Cir. 1989) (a "reviewing court must examine the relative probative and prejudicial value of evidence to determine whether its admission violated defendant's right to a fair trial."). Specifically, Judge Stark found that Petitioner failed to demonstrate a reasonable likelihood that Detective Conner's testimony could have affected the verdict – *i.e.*, Petitioner failed to satisfy the materiality prong of the standard applicable to prosecutorial misconduct claims:

> During the Rule 61 remand, the Superior Court heard Detective Conner's possible explanations for the discrepancy and had an opportunity to observe Detective Conner's demeanor and assess his credibility. Notably, even after finding that Detective Conner did not write the word "shooter" on State Exhibit 84 contemporaneously

---

³The arguments were not considered with respect to Claim One (A) because of the determination that Petitioner did not establish a *prima facie* due process violation stemming from the evidentiary error alleged in Claim One (A).

9

> with his interview of Romeo, the Superior Court still concluded that Romeo identified Petitioner as the shooter during her interview with Detective Conner and viewed as irrelevant the timing of Detective Conner's alteration of State Exhibit 84. If the timing of Detective Conner's alteration to State Exhibit 84 did not affect the substance of Romeo's § 3507 statement for admissibility purposes, it logically follows that Detective Conner's testimony regarding the timing of his alteration did not affect the substance of Romeo's § 3507 statement. In addition, another eyewitness, Violet Gibson, provided a recorded statement to Detective Conner that implicated Petitioner in the murders.
>
> Given Gibson's identification, Petitioner cannot demonstrate a reasonable likelihood that the jury would not have convicted him without Romeo's identification. Consequently, while the falsity of Detective Conner's testimony about when he wrote the word shooter on State Exhibit 84 may have been used to impeach Detective Conner's credibility, the falsity of Detective Conner's testimony would not have "destroyed the credibility" of Romeo's identification of Petitioner or the credibility "of the prosecution itself," especially since there was another identification of Petitioner.

(D.I. 40 at 34 to 37) For these same reasons, the Court concludes that the admission of the Detective Conner's testimony during Petitioner's trial did not undermine the fundamental fairness of the entire trial.[4] Accordingly, the Court will deny Claim One (A).

---

[4]The Court acknowledges that Petitioner contends that the dismissal of Claim Two (A) was based on an erroneous analysis of the materiality prong of the prosecutorial misconduct standard. (D.I. 42 at 7-13) Given the Court's rejection of Petitioner's challenge to the issue of materiality (*see infra* at Section III.A), the

10

### B. Court's Denial of Claim Two (A)

Next, Petitioner contends that the Court should alter or amend Judge Stark's judgment that: (1) the § 3507 testimony would have been permitted even if Detective Conner's perjury and evidence tampering had been discovered, or if he had never done it in the first instance; and (2) the exposure of the perjury and evidence tampering would not have been materially damaging to Detective Conner's credibility. Petitioner essentially re-asserts the substance of his arguments for Claim Two (A) that were already considered. Importantly, Petitioner does not present any intervening change in law, the availability of previously unavailable evidence, or a "clear error of law" of the sort that would compel reconsideration of the Court's denial Claim Two (A). Therefore, the Court will deny Petitioner's request to alter or amend the denial of Claim Two (A).

### C. Court's Denial of Claim Three (A)

In Claim Three (A), Petitioner argued that trial counsel provided ineffective assistance by failing to examine State Exhibit 84 and failing to discover that Detective Conner had falsified the phot array and committed perjury. (D.I. 42 at 13) In his Rule 59 (e) Motion, Petitioner contends that the Court should reconsider the denial of Claim Three (A) because it was based on the erroneous conclusion

---

Court finds it can appropriately rely on the reasoning behind Judge Stark's materiality determination.

11

"that the state courts reasonably applied *Strickland* and reasonably determined the facts." (D.I. 42 at 16)

None of the "errors" identified by Petitioner warrant reconsideration of the denial of Claim Three (A). For the most part, Petitioner's presentation of the alleged "errors" essentially re-asserts the same arguments he presented in his Petition. To the extent Petitioner identifies new "errors", his arguments are unavailing. For instance, Petitioner erroneously asserts that the Delaware Supreme Court unreasonably identified and applied the prejudice prong of the *Strickland* standard. (D.I. 42 at 15) According to Petitioner, the Delaware Supreme Court viewed the appropriate question for determining prejudice as being whether Petitioner "was prejudiced by the introduction of Romeo's § 3507 statement." (D.I. 42 at 15) Not so. The language Petitioner quotes was actually the Delaware Supreme Court's summary of the IATC argument Petitioner presented in his Rule 61 motion and not the standard that the Delaware Supreme Court applied when reviewing that IATC argument.[5] (*See* D.I. 18-11 at 33) Instead, the Delaware Supreme Court applied the following correct standard for *Strickland* prejudice: "In

---

[5] The Delaware Supreme Court stated: "As a result, the Court can reasonably infer Defendant's ineffective assistance of counsel argument, specifically, to be that Trial Counsel was deficient for failing to notice the discrepancy and that Defendant was prejudiced by the introduction of Romeo's § 3507 statement identifying Defendant as the shooter." (D.I. 18-11 at 33)

12

order to show prejudice, the defendant must establish that, but for trial counsel's deficient performance, there is a reasonable probability that the result would have been different." (D.I. 18-11 at 32)

Petitioner also contends that the Court erred in giving deference to the "state court's findings that Gibson also identified [Petitioner] as the 'shooter'," because "Gibson's identification was equivocal." (D.I. 42 at 16) This conclusory assertion is unpersuasive.

In sum, Petitioner does not present any intervening change in law, the availability of previously unavailable evidence, or a "clear error of law" or fact of the sort that would compel reconsideration of the Judge Stark's denial of Claim Three (A). Thus, the Court will deny Petitioner's instant request for reconsideration.

## D. Court's Refusal to Grant Certificate of Appealability

Petitioner asks the Court to reconsider the decision not to issue a certificate of appealability for Claims One (A), Two (A), Three (A), and Five, asserting that "these claims are certainly debatable." (D.I. 42 at 16-17) This argument does not identify manifest errors of law or fact underlying the decision not to grant a certificate of appealability. Therefore, the Court declines to reconsider the denial of a certificate of appealability.

13

## IV. CONCLUSION

For the reasons discussed, the Court will grant in part and deny in part Petitioner's Rule 59 (e) Motion. Petitioner's motion for reconsideration of the basis for denying Claim One (A) will be granted. Petitioner's motion for reconsideration of the denials of Claims Two (A) and Three (A) and the prior refusal to grant a certificate of appealability will be denied. Additionally, having reconsidered Claim One (A) and concluding that it lacks merit, Petitioner's habeas Petition will again be denied. To the extent one may be necessary, the Court also declines to issue a certificate of appealability with respect to its decision with respect to the instant Rule 59 (e) Motion because Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Eyer*, 113 F.3d 470 (3d Cir. 1997); 3d Cir. LAR 22.2 (2011). The Court will enter an order consistent with this Memorandum Opinion.